# ALBIN BERGQUIST AND ANOTHER v. ERASMUS G. KREIDLER.[1]

February 1, 1924.

No. 23,766.

**Defendant liable for reasonable expense of litigation due to his misrepresentations.**

1. Where plaintiffs are put in a position, as the direct result of defendant's fraudulent misrepresentation, where they are forced to initiate litigation in order to enforce and protect a legal right, their reasonable expense in that litigation is recoverable from defendant as a part of the damages for his original wrong, he having been notified of the litigation, asked to participate in it, and having made no objection to plaintiffs' proposed action.

**Failure of litigation immaterial.**

2. Under such circumstances, it being clear that plaintiffs proceeded in good faith and upon reasonable grounds for the belief in the propriety and efficiency of the procedure adopted, it is immaterial that it failed of its purpose.

Action in the district court for St. Louis county to recover $4,166.99. The case was tried before Cant, J., who denied motions to instruct the jury that no verdict should be found against defendants George and Frank L. Kreidler, and a jury which returned a verdict for $2,006.99. Defendants' motions for judgment notwithstanding the verdict was granted as to defendants Frank and George and denied as to defendant Erasmus. His motion for a new trial was denied defendant Erasmus. From the judgment entered pursuant to the verdict, Erasmus G. Kriedler appealed. Affirmed.

*H. H. Phelps,* for appellant.

*Jenswold, Jenswold & Dahle,* for respondent.

[1]Reported in 196 N. W. 964.

STONE, J.

In this action for damages caused by misrepresentation, judgment was procured against only defendant, Erasmus G. Kreidler, and he appeals. The amount of the recovery consists of two items, a portion of the rental value for two years of the real estate in question, and upwards of $800 spent by plaintiffs in attorneys' fees and disbursements, incurred by them in litigation after their purchase of the real estate from defendants, and in an effort to enforce and protect their right to its possession. The learned trial judge ruled the latter item to be a proper element of damages and instructed the jury accordingly. The correctness of that ruling is the only question presented by this appeal.

The genesis and much of the history of the transaction resulting in this case will be found narrated in Bergstein v. Bergquist, 152 Minn. 358, 189 N. W. 120. That decision was the final chapter in the litigation, plaintiffs' expenses in which are now in issue. It is advisable to make the following restatement here.

The premises in question were occupied by a store building. In April, 1920, they were purchased by plaintiffs from Elizabeth Kreidler, her son, defendant Erasmus G. Kreidler, acting as her agent. Plaintiffs made the purchase relying upon the representation of Erasmus G. Kreidler, that the lease of the store room then in force would expire August 1, 1920. In other words, appellant represented to plaintiffs that they would have the right to possession on August 1, 1920, and that they could then get the actual possession of the store room. That representation was false because the then tenant held under a lease assuring his possession until August 1, 1922, two years later than represented by defendant, and at a rental far below the then actual value of the store.

The falsity of the representation was not discovered by plaintiffs until after the closing of their contract of purchase. They endeavored to get possession of the premises on August 1, 1920, but failed, the tenant asserting his right to continued possession. They discovered that the lease was not signed by Elizabeth Kreidler, the fee owner, but by Erasmus G. Kreidler, as her agent, the latter,

however, not being thereunto authorized in writing. Because of the latter fact plaintiffs were advised that the lease might be unenforceable under the statute of frauds.

In order to test out that phase of the matter, plaintiffs proceeded against the tenant, Albert Bergstein, in an unlawful detainer action. The decision therein in the municipal court of Duluth was in favor of plaintiffs. It was confirmed on appeal to the district court. In the meantime, Bergquist, as a matter of precaution, had commenced a suit for specific performance of his lease. That case was heard in the district court concurrently with the unlawful detainer action, and in that, also, the decision was for plaintiffs and against Bergquist, the tenant. On appeal the decision was reversed here by a divided court, and the right of the tenant to hold under the old lease for two years from August 1, 1920, was confirmed.

It is the plaintiffs' expense, attorneys' fees and other disbursements, in that litigation between themselves and Bergquist, that is now in question. With commendable candor it is conceded by counsel for appellant that, insofar as the judgment against him represents the difference between the stipulated rent and the increased rental value of the premises during the two year period in question, it should stand. When they initiated the litigation with Bergstein, plaintiffs served upon defendants a notice advising them of the facts and inviting them to take part in the conduct of the action, and notifying them further that, in case Bergstein should prevail and plaintiffs be denied restitution, they would hold the defendants liable for damages by reason of the false representation concerning the lease.

Under the peculiar facts of this case, were their attorneys' fees and disbursements as a matter of law a part of the damages caused plaintiffs by appellant's misrepresentation? We say as a matter of law because, if there were any question of fact, there would have to be a new trial in view of the peremptory instruction of the trial court.

When plaintiffs closed their purchase they acquired, as against defendants, the legal right to the possession of the store room on August 1, 1920. As it turned out, that right was impossible of

realization and plaintiffs' enjoyment of possession was postponed for two years. It is immaterial that the tenant may have been willing for the sake of compromise to pay an increased rent. Plaintiffs were entitled to possession themselves no matter what the tenant might have been willing to pay. Being entitled to possession, plaintiffs were certainly at liberty, so long as they proceeded in good faith and upon reasonable grounds for the procedure adopted, to take any lawful step to secure possession.

In this case the presence both of good faith and reasonable grounds must be assumed as against appellant. He was notified of the steps taken. He not only refused to participate, but found no fault with plaintiffs' plan of campaign. Had he then admitted his error and advised plaintiffs that the lease was good for two years more, and that they would have to be content to recover the excess rental value, the case would be very different. The expense incurred thereafter might not be a direct cause of defendants' original misrepresentation, but rather the result of the ignoring by plaintiffs of defendants' later assurance that the lease could not be avoided.

Plaintiffs' position was equivocal and decidedly embarrassing. Had it turned out that the two-year extension of the lease was avoidable and had plaintiffs awaited the expiration of the period and then sued only for the increased rental value, they might have been met with the contention that there was no damage because they had acquiesced in the tenant's wrongful possession under a void lease. The embarrassing dilemma in which plaintiffs were placed was due solely to the wrongful act of appellant. In such a position, facing its imponderable potentialities, no matter what choice the wronged one makes, the burden of a mischoice, made in good faith and upon reasonable grounds for the action taken, should be placed on the wrongdoer rather than his victim. That result will be accomplished only by holding that the latter may recover the reasonable expenses of litigation, undertaken in good faith and upon reasonable grounds, to avoid the results of defendants' wrong.

To hold otherwise would penalize an innocent party for an election given him by law in order to escape the results of another's

wrongdoing. And it would enable the latter to stand by without risk, assuming no responsibility, but taking the advantage if his victim's choice turns out to be the right one and losing nothing if it is wrong.

Our conclusion is well within the general rule that a "wrongdoer is answerable for all the injurious consequences of his tortious act which, according to the usual course of events and general experience were likely to ensue, and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated." This statement of Mr. Sutherland, was cited with approval in Sargent v. Mason, 101 Minn. 319, 323, 112 N. W. 255.

Personally, I have never been able to see any basis for the reference, in discussing measures of damage, to what the parties may have contemplated or to what they may be supposed to have contemplated. My own idea is that whatever a wrongdoer and his adversary may or may not have contemplated, as the result either of breach of contract or a tort, has nothing to say in answer to the question whether a given element of resulting loss should be considered legal damage. The rule of causation furnishes a better formula for the solution of such a problem.

Where the standard of contemplation has been used at all, the courts have consulted their own motions rather than any that might have been attributed to the parties. In other words, they have in fact determined, not what was contemplated, but whether a given event is the direct result of the wrongful act. This finds apt illustration in the terse statement of Mr. Justice Collins, speaking for this court in Schumaker v. St. Paul & Duluth R. Co. 46 Minn. 39, 42, 48 N. W. 559, 12 L. R. A. 257.

"He who commits a trespass must be held to contemplate all the damages which may legitimately flow from his illegal act, whether he may have foreseen them or not; and, so far as it is plainly traceable, he must make compensation for the wrong. The damages cannot be considered too remote if, according to the usual experience of mankind, injurious results ought to have been apprehended. It is not necessary that the injury, in the precise form in which it

in fact resulted, should have been foreseen. It is enough that it now appears to have been a natural and probable consequence."

That statement is convincing and compels an affirmance here, for it does not admit of dispute that the litigation in which plaintiffs became involved was the direct, legitimate and a to-be-expected result of appellant's misrepresentation. The loss sustained by plaintiffs in conducting that litigation "is plainly traceable" to appellant's wrong and he should make compensation accordingly.

The case is not within the rule of Frost v. Jordan, 37 Minn. 544, 36 N. W. 713, and Lamb v. Shaw, 43 Minn. 507, 45 N. W. 1143. Those cases both had to do with damages under bonds, one in support of an attachment and the other an incident to a temporary injunction. In both cases the distinction was drawn between the expenses attributable directly to the attempt to escape the special writ and those incident to the main action. In Lamb v. Shaw, the services for cost of which recovery was sought, "were such as were rendered in the regular conduct of the case, and as would necessarily have been rendered independently of the injunction." Here, plaintiffs' outlay was the result, in direct and necessary sequence, of appellant's wrongful act.

One guilty of an affirmative wrong certainly is no better off before the law than one who is only passively negligent. In a case of the latter class, it has been held that if a carrier "departs from the line of his duty and violates his contract, and while thus in fault, and in consequence of that fault, [plaintiff's] goods are injured by an act of God which would not otherwise have caused the injury," the carrier is liable for the resulting damage. Bibb Broom Corn Co. v. Atchison, T. & S. F. Ry Co. 94 Minn. 269, 102 N. W. 709, 69 L. R. A. 509, 110 Am. St. 361, 3 Ann. Cas. 450. In the instant case, the loss arising from the litigation in which plaintiffs were involved by appellant's misrepresentation was much more clearly a direct and proximate result of the wrong, for neither act of God nor the independent agency of a human being intervened.

It may be well to observe that the fact that plaintiffs initiated the litigation with the tenant, is not material, because that act was

practically forced upon them by appellant's wrong. That litigation constituted a reasonabe effort to avoid or minimize the consequence of defendant's act. 8 R. C. L. 496. True, the object of that litigation was not accomplished. That it was ineffectual, under the circumstances, is not persuasive of a contrary result. 17 C. J. 806. If such expenditures are "judicious and made in good faith" they may be "recoverable though abortive." Sutherland, Damages (2d ed.) § 58, cited in First Nat. Bank of Hutchinson v. Williams, 62 Kan. 431, 63 Pac. 744. That case allowed recovery of expense incurred by a bank in an effort to protect itself from loss arising from the defendant's wrongful act in negotiating a check drawn on a bank where he had no deposit.

Other cases somewhat similar in principle are McGaw v. Acker, Merrall & Condit Co. 111 Md. 153, 73 S. E. 731, 134 Am. St. 592; Indiana Nat. Life Ins. Co. v. Butler, 186 Ky. 81, 215 S. W. 949; Curtley v. Security Savings Society, 46 Wash. 50, 89 Pac. 180; Hubbard v. Gould, 74 N. H. 25, 64 Atl. 668.

It will be perceived that this opinion is limited to the facts of this case and that it is not intended to hold that in all cases the expense of litigation following torts or breaches of contract is recoverable. The thing which we here consider controlling in favor of the recovery is the direct relation of cause and effect between appellant's wrong and the resulting litigation. We cannot say that, in the situation they were placed by appellant's misrepresentation, respondents should have adopted any other course than they did. But, even if there is a question as to that, the fact remains that plaintiffs' course was taken in good faith and upon reasonable grounds for a belief in its propriety and efficiency. That being the case, we are constrained to hold appellant liable.

Order affirmed.