## HAROLD LOWREY v. WILLIAM M. DINGMANN.

### 86 N. W. (2d) 499.

November 29, 1957—No. 37,204.

*Harry E. Burns,* for appellant.
*Jerome B. Simon* and *Bundlie, Kelley & Maun,* for respondent.

MATSON, JUSTICE.

Defendant, in an action for fraud and deceit, appeals from a judgment awarding plaintiff damages for defendant's fraudulent representations in the sale of two falsely registered Shetland ponies. The fraud

is admitted and this appeal raises issues only as to the proper elements to be considered in determining the amount of damages.

Plaintiff, a resident of Nebraska, has been and is engaged in the business of breeding, training, buying, and selling thoroughbred, registered Shetland ponies. He is engaged in this business individually, with ponies he owns himself, and is also a one-third partner in a pony business with his father and brother. Plaintiff, who does all the work of training, breeding, and caring for the ponies owned by him and owned by the partnership, personally attends pony auctions in various parts of the country to buy and sell ponies. Plaintiff, and the partnership, have a well-established reputation among pony breeders and dealers for skill and care and reliability in the breeding and sale of thoroughbred ponies and their herd of registered animals is widely known as a source of choice breeding stock.

Defendant, a resident of St. Cloud, who had been engaged primarily in operating a truckline and in selling trucks, applied in 1954 to the American Shetland Pony Club, which maintains registration of bloodlines for Shetland ponies in the United States, to register two ponies owned by him. In his application defendant knowingly misrepresented the parentage of these two ponies and by such misrepresentation wrongfully obtained their registration as thoroughbred animals. A registered pony of good quality commands a substantially higher price than an unregistered pony.

On October 1, 1954, plaintiff, at a public auction in Kansas City, in reliance upon defendant's fraudulent representations and the fraudulently procured registration certificates, bought the ponies from the defendant for $700 each. Plaintiff trained and cared for the ponies for eight months and then sold them as registered animals at a public pony auction at Eldora, Iowa, on May 28, 1955. One was purchased by Louis Bierman for the sum of $1,575 and the second was purchased by one Clayton Moulton for the sum of $1,350. Both purchasers relied on plaintiff's representation that the ponies were registered.

In October 1955, plaintiff learned from Moulton that the pedigrees of the ponies were not as represented and that they were therefore not entitled to registration. Moulton demanded that plaintiff take back the pony he had purchased and not only refund the purchase price but also

pay him an additional sum of $1,500 as damages. As part of a compromise settlement, plaintiff took the pony back, refunded the purchase price, and agreed to pay Moulton $1,250 as additional damages. Shortly thereafter, Bierman was informed that the pony he purchased from plaintiff was not as represented and made a similar demand. A similar out-of-court settlement was made of Bierman's demands whereby plaintiff took back the pony, refunded the purchase price, and agreed to pay him $1,000 in addition. The additional sums of $1,250 and $1,000, respectively, which plaintiff obligated himself to pay as damages to Moulton and Bierman had not yet been paid at the time of trial.

Defendant, by his attorney, admitted the fraud and deceit during the course of the trial and there was no issue as to liability before the jury. In submitting to the jury the sole issue of damages, the trial court instructed the jurors that they might consider the following four elements of damages: (1) The difference between the actual value of the ponies and the price paid for them; (2) the damages claimed for making settlements with purchasers Moulton and Bierman if the jury found such settlements to have been made in good faith and not unreasonable or arbitrary; (3) the loss of profits shown with a reasonable certainty to have resulted directly and proximately from the fraud prior to the discovery of the fraud; and (4) damages for injury to plaintiff's reputation which were neither speculative nor remote.

The jury returned a verdict for the plaintiff in the aggregate amount of $5,200 plus interest, awarding $600 for the difference in value between what was given and what was received, $2,250 for the settlements, $1,525 for lost profits, and $825 for injury to plaintiff's reputation. Defendant moved for a new trial and the motion was denied.

Defendant, upon this appeal from the judgment entered, alleges that the trial court erred in permitting the jury to award, in addition to the sum representing the difference in the actual value of the Shetland ponies and the price paid for them, special damages sustained by the plaintiff in making a good-faith and reasonable settlement with Moulton and Bierman, who had subsequently bought the falsely registered animals from the plaintiff; damages for loss of profits prior to the discovery of the fraud; and damages for injury to plaintiff's reputation as a reliable seller of registered animals. No error occurred.

■ In this jurisdiction, in fraud and deceit actions for damages sustained by the purchaser in buying property in reliance upon the fraudulent representations of the seller, the rule is that, where the property is not returned, the measure of damages is the difference between the actual value of the property received and the price paid for it, and in addition thereto such other or special damages as were naturally and proximately caused by the fraud prior to its discovery,[1] inclusive of restitution for expenses reasonably and necessarily incurred after discovery of the fraud in a bona fide effort to mitigate the aforesaid damages.[2] This is the minority rule, which is but a yardstick for measuring and confining damages to the actual out-of-pocket losses sustained by the purchaser as a proximate result of the seller's fraud and the purchaser's reliance thereon.[3]

■ The party guilty of the fraud is liable for all out-of-pocket-loss damages proximately caused by the fraud, even though such damages were not within the contemplation of the wrongdoer or his adversary.[4]

Under the foregoing rule of damages, it is clear that evidence was properly admitted upon, and the jury was correctly allowed to consider, the items of damage relating to injury to plaintiff's reputation, settlements with subsequent purchasers, and the loss of those profits which had been actually earned prior to the discovery of the fraud.

There was ample evidence in the record to show that plaintiff's reputation for honesty and care as a pony breeder had been injured. This injury was a direct and proximate result of defendant's fraud,

---

[1]Wallace v. Hallowell, 56 Minn. 501, 58 N. W. 292; Magnuson v. Burgess, 124 Minn. 374, 145 N. W. 32; Barthelemy v. Foley Elev. Co. 141 Minn. 423, 170 N. W. 513; Perkins v. Meyerton, 190 Minn. 542, 251 N. W. 559; Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305; 17 Dunnell, Dig. (3 ed.) § 8612.

[2]Bergquist v. Kreidler, 158 Minn. 127, 196 N. W. 964.

[3]For a comparison of Minnesota's out-of-pocket-loss rule and the benefit-of-bargain rule followed in a majority of jurisdictions, see 24 Am. Jur., Fraud and Deceit, §§ 227, 228; Annotation, 124 A. L. R. 37.

[4]See Bergquist v. Kreidler, 158 Minn. 127, 196 N. W. 964, wherein damages were allowed for attorney's fees proximately caused by defendant's fraudulent misrepresentations; 37 C. J. S., Fraud, § 141, pp. 466, 467.

thus, defendant may be compelled to respond in damages for the injury.

Similarly, under the Minnesota rule of damages plaintiff's settlement obligations were a proper element of damages. As a direct result of defendant's deceit plaintiff was required to arrange settlements with Moulton and Bierman. There was ample evidence from which the jury could have found that the settlements were made in good faith, were reasonable, and were necessary to protect plaintiff from litigation and thus to mitigate the injury to plaintiff's reputation and business goodwill. Defendant does not contend that the settlements were not in good faith, nor does he claim that they were unreasonable or unnecessary. Rather, defendant maintains that, no matter what rule of damages is applied, third parties are not allowed to collect for damages without commencing their own separate actions; that plaintiff cannot collect for Moulton and Bierman. This argument is patently without merit and defendant cites no authority for it. As a direct and proximate result of defendant's wrongful act, plaintiff has incurred reasonable and necessary obligations to Moulton and Bierman, for which defendant is liable in damages. To uphold defendant's argument would be to reach the absurd conclusion that plaintiff could not take reasonable and necessary action, by provident settlement, to mitigate the damages already caused as a proximate result of defendant's wrongful act and instead must await burdensome litigation. Since the settlements with Moulton and Bierman definitely fixed the amount of plaintiff's liability to these parties, and the jury has found the settlement to be reasonable, it is immaterial that the entire amount due thereunder had not been paid at the time of trial.

Plaintiff purchased the two ponies from defendant for $1,400. He expended considerable time, effort, and money in the eight months he owned them to prepare them for sale. He sold them for $2,925, realizing a profit of $1,525 over and above the price he paid defendant. As the indirect and proximate result of defendant's fraud and deceit, plaintiff was obliged to refund the $2,925, thereby losing the $1,525 profit which he had already earned. The $1,525 sum was not what plaintiff hoped or expected to realize on resale of the ponies. It represents a profit which was actually realized and then taken away. Moreover, it

represents substantial labor and expenditures for the care and training of the ponies during the eight months plaintiff owned them. Under the Minnesota rule of damages for deceit stated above, plaintiff's loss of profits was a proper element of damages.

Defendant took no exception to the trial court's charge which instructed the jury on the Minnesota rule of damages and is now in no position to complain and, in fact, he has not been prejudiced by such rule. It is, of course, established that the proper measure of damages in a fraud action is a matter of substantive law, governed by the law of the place where the wrongful act occurred.[5] In this case the fraudulent act was committed in either Kansas City, Missouri, or Kansas City, Kansas. The record does not disclose which of these two states is involved. It is immaterial which state is involved since both of them subscribe to the benefit-of-the-bargain rule under which the plaintiff would be entitled to a more generous measure of damages.[6] Since the benefit-of-the-bargain rule is more liberal than the out-of-pocket-loss rule, defendant has, in any event, suffered no prejudice.

Since the evidence, taken, as it must be, in the light most favorable to the verdict, reasonably sustains the jury's findings on the various items of damage, the judgment of the trial court must be affirmed.

Affirmed.

Mr. Justice Murphy took no part in the consideration or decision of this case.

---

[5]McCormick, Damages, § 2; 3 Dunnell, Dig. (3 ed.) § 1550, and cases therein cited.

[6]See, Becker v. McKinnie, 106 Kan. 426, 186 P. 496; Wolfersberger v. Miller, 327 Mo. 1150, 39 S. W. (2d) 758; McCormick, Damages, § 121; Annotation, 124 A. L. R. 37.