# EMMA L'EVESQUE v. ROGER T. ROGNRUD AND ANOTHER.

93 N. W. (2d) 672.

December 12, 1958—No. 37,492.

56

*Elmer R. Anderson* and *W. R. Poseley,* for appellant Lueck.
*George N. Guttmann* and *Robert Latz,* for appellant Rognrud.
*Diessner, McEachron, Wurst & Bundlie,* for respondent.

DELL, CHIEF JUSTICE.

Defendants appeal from an order of the municipal court of Minneapolis denying their alternative motion for judgment notwithstanding the verdict or for a new trial. At the trial plaintiff's and defendants' versions of the facts were in conflict, but the verdict in plaintiff's favor resolves the conflict and we must accept the facts as she stated them.[1]

Plaintiff was a single woman, 75 years of age. In June 1954 she purchased an apartment building and during the following year made improvements on it. In March 1955 she decided to sell her property. Her intention was to secure another building which would have suitable quarters for her and which would also provide her with rental income. She contacted defendant William G. Lueck to see if he could locate a buyer and he, in turn, produced defendant Roger T. Rognrud.

The parties met and inspected the premises and later defendant Rognrud offered plaintiff $350 in cash and a vendor's interest in a contract for deed which he held and upon which the balance due was $1,712.03. Plaintiff objected to this offer because it would not suit her needs and repeated her intention of finding an apartment building in which she might live and from which she would also derive an income. Defendant Lueck assured her that the vendor's interest in the contract for deed offered to her was as good as cash, and defendant Rognrud, by his actions, assented to Lueck's representation and said that he would find her another building in which she would be able to live. On the basis of these assurances plaintiff accepted the offer. Instruments of exchange were prepared and on the following day they were signed in plaintiff's apartment. At the time she again made clear her desire to

---

[1]Swanson v. Minneapolis St. Ry. Co. 252 Minn. 484, 90 N. W. (2d) 514.

secure another building where she might reside and defendant Rognrud again promised to find one for her and if not to reacquire the contract for deed. Following this transaction, plaintiff contacted defendant Rognrud several times regarding the acquisition of a new piece of property but none was ever found.

In July 1955 plaintiff was in need of cash and attempted to dispose of the contract for deed but then learned that it could not be sold for more than $200 or $250. She then brought this action to recover the difference between $1,712.03, the stated value of the contract for deed and the sum which she paid for it, and the true and actual value of the contract for deed and also for the loss of rents which she sustained as a result of the transfer of her property.

This case presents three issues for our determination: (1) Do the facts as stated form a sufficient basis for an action for fraudulent misrepresentation? (2) Was plaintiff competent to testify as to the value of her property? (3) What damages were recoverable by plaintiff?

■ We have recently had occasion to consider the elements which will sustain an action for fraud. In Swanson v. Domning, 251 Minn. 110, 114, 86 N. W. (2d) 716, 720, we said:

"The rule we follow in this state in establishing a fraudulent representation is stated in 8 Dunnell, Dig. (3 ed.) § 3818, as follows:

" 'A person is liable for fraud if he makes a false representation of a past or existing material fact susceptible of knowledge, knowing it to be false, or as of his own knowledge without knowing whether it is true or false, with intention to induce the person to whom it is made to act in reliance upon it, or under such circumstances that such person is justified in acting in reliance upon it, and such person is thereby deceived and induced to act in reliance upon it, to his pecuniary damage.'

"An unqualified affirmation amounts to an affirmation of one's own knowledge.

"It is immaterial whether a statement made as of one's own knowledge is made innocently or knowingly. An intent to deceive no longer is necessary. Nor is it necessary to prove that defendants knew the representations were false.

"Fraudulent intent may be proved by showing that the party knew his statements to be false; or that, having no knowledge of their truth or

falsity, he did not believe them to be true; or that, having no knowledge of their truth or falsity, he yet represented them to be true of his own knowledge."

Applying the facts of the instant case to the principles just announced, we have no difficulty in concluding that they are sufficient to establish a basis for a fraud action. Two representations were made to induce plaintiff to accept defendant Rognrud's offer. One had to do with the value of the contract for deed which was traded to her and the other dealt with finding her a suitable building in which she could live and which would provide her with rental income. Whether or not these statements were made innocently is not important since defendants' intent is not material.[2] Defendants' further contention that, at best, this amounted to trade talk or puffing is not sound. In so far as the value of the property is concerned, it is true that a fraud action cannot be predicated merely upon statements relating to value,[3] but that is not the case here. Coupled with the statement that the exchanged contract for deed was as good as cash was the promise by defendant Rognrud to stand good for its value. Moreover the repeated assurances that another building would be found for the plaintiff became an integral part of the whole arrangement and were the chief inducement for the completed transaction. The jury accepted this version of the facts and on the record here we will not disturb its verdict.

■ The next question before us concerns plaintiff's competence to testify to the actual value of the vendor's interest in the contract for deed assigned to her. It is a well-settled rule in this state that an owner is presumptively acquainted with the value of his property; that he may testify to its value without any particular foundation; and that any lack of knowledge goes, not to the competency of his testimony, but to its weight.[4] It is his familiarity with the property itself, rather than his ability to act as an expert appraiser, which is of paramount importance.[5]

[2]Osborn v. Will, 183 Minn. 205, 236 N. W. 197; Jacobson v. Chicago, M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144.

[3]Brody v. Foster, 134 Minn. 91, 158 N. W. 824, L. R. A. 1916F, 780.

[4]Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305.

[5]Fairmont Gas Engine & Ry. Motor Car Co. v. Crouch, 133 Minn. 167, 157 N. W. 1090.

True, in Fairmont Gas Engine & Ry. Motor Car Co. v. Crouch, 133 Minn. 167, 157 N. W. 1090, and in Crich v. Williamsburg City Fire Ins. Co. 45 Minn. 441, 48 N. W. 198, we indicated that bare ownership of property may not be sufficient in itself to qualify a person to testify, but in both of those cases it was held that the parties involved were competent to testify. We see no difference between those cases and the instant one.

In fraud cases the burden of proof respecting the amount of loss is upon the complaining party,[6] in this instance the plaintiff. Plaintiff was qualified to testify regarding the value of her property and her testimony was subject to cross-examination. She stated that she had contacted nearly two dozen different investment and real estate companies in the attempt to sell the contract for deed and that her belief as to its value was based partially upon the offers which she had received for it. Her action differs substantially from that of the defendant in Reynolds v. Franklin, 47 Minn. 145, 49 N. W. 648, where it was held that the value of real estate could not be proved from the single offer to sell property at an allegedly reasonable price which was refused. Here plaintiff did all that was required of her. If defendants wished to know the identities of the unnamed persons whom she had contacted they were free to inquire on cross-examination. They were likewise free to provide testimony of their own to rebut plaintiff's.

■ The final question before us relates to the damages which plaintiff suffered. "In this jurisdiction, in fraud and deceit actions for damages sustained by the purchaser in buying property in reliance upon the fraudulent representations of the seller, the rule is that, where the property is not returned, the measure of damages is the difference between the actual value of the property received and the price paid for it, and in addition thereto such other or special damages as were naturally and proximately caused by the fraud prior to its discovery * * *."[7] This is the so-called "out-of-pocket" rule.

---

[6]Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 10, 74 N. W. (2d) 305, 311 to 312.

[7]Lowrey v. Dingmann, 251 Minn. 124, 127, 86 N. W. (2d) 499, 501, and cases cited.

In the instant case the jury returned a verdict of $1,844. At the time of the transaction the contract for deed was assigned to plaintiff at its face value of $1,712.03. Plaintiff testified that when she sought to sell it no more that $250 could be obtained for it and that she valued it at not more than $250. The difference between these two amounts is $1,462.03, the amount plaintiff was entitled to recover on the record before us. The remaining $381.97 represents the loss of rentals which plaintiff claimed to have sustained on the contract for deed which she assigned to the defendant Rognrud prior to her discovery of the fraud and which she claims as special damages proximately resulting therefrom. She may not recover these unless she is to be unjustly enriched at defendants' expense.

When the fraud was discovered three avenues of relief were open to plaintiff. She could rescind the transaction by her own act;[8] she could bring an action for rescission on such grounds as the court deemed proper;[9] or she could elect to stand on the bargain and to bring an action in deceit for the damages resulting from the fraud,[10] as she ultimately did. But she was required to select one remedy only; she could not join them to her advantage. Stated another way, plaintiff could not affirm the transaction and at the same time seek to be restored to the status quo ante.[11]

It is clear that the plaintiff elected to stand on the bargain and to bring an action in deceit to recover the damages resulting from the fraud. Clearly she had no intention of rescinding the transaction. It necessarily follows that she intended to part with her former property and, having parted with it, she cannot expect to enjoy the emoluments to be derived from it. To the extent then that the verdict exceeds the difference between the actual value of the contract for deed and the price which she paid for it, it cannot be sustained.

Defendants' further contention that there should be deducted from

---

[8] Dunnell, Dig. (3 ed.) § 1810 and note 14.

[9] See, Nelson v. Carlson, 54 Minn. 90, 55 N. W. 821.

[10] Lowrey v. Dingmann, 251 Minn. 124, 86 N. W. (2d) 499; Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305.

[11] Henvit v. Keller, 218 Minn. 299, 15 N. W. (2d) 780; Houchin v. Braham Investment Co. 202 Minn. 540, 279 N. W. 370, 120 A. L. R. 1152.

plaintiff's recovery the sums already paid to her on the exchanged contract for deed is not proper. In the first place it would require us to consider the property in terms of its income value rather than in terms of its market value and thus would be contrary to the purposes for which plaintiff purchased it. Second and more important, it would have compelled the jury to indulge in speculation as to the possibility of continued payment, thereby introducing an unnecessary and complicating factor into their deliberations. Such a procedure was explicitly foreclosed in Tysk v. Griggs, 253 Minn. 86, 91 N. W. (2d) 127.

A new trial on the issue of damages is therefore granted unless, within 10 days after the filing of the remittitur in the court below, the plaintiff files a written consent to a reduction of the verdict to $1,462.03, interest being allowed on that sum from the date the verdict was originally entered. In the event of compliance with this condition, the order appealed from shall be and is affirmed.

Reversed on condition.