**SPORTS PAGE, INC., d/b/a The Competition, et al., Respondent,**

v.

**FIRST UNION MANAGEMENT, INC., Appellant.**

**No. C9-88-2122.**

Court of Appeals of Minnesota.

April 18, 1989.

Ronald C. Anderson, Hulstrand, Anderson & Larson, Willmar, for respondent.

Raymond R. Waechter, Gustafson & Waechter, Willmar, for appellant.

Heard, considered, and decided by RANDALL, P.J., and KALITOWSKI and SCHULTZ *, JJ.

## OPINION

RANDALL, Judge.

On April 29, 1988, a jury returned a verdict in favor of respondent Sports Page, Inc., on its claim for fraudulent misrepresentation against appellant First Union Management. Following the verdict, appellant filed motions for judgment notwithstanding the verdict or a new trial. The trial court denied appellant's post-trial motions, and entered judgment for respondent. This appeal ensued. We affirm.

## FACTS

Appellant owns and operates the Kandi Mall in Willmar, Minnesota. Respondent operated the sporting goods department of a large store in appellant's mall. Respondent decided to open its own sporting goods store in the mall, so it entered into negotiations with appellant to lease retail space. On November 11, 1985, respondent entered into a lease agreement with appellant for 2400 feet of retail space in the mall. The commencement date of the lease was February 1, 1986.

During negotiations, respondent told appellant that respondent would not lease a store in the mall if appellant leased space to Athletic Fitters, respondent's competitor. Appellant told respondent that appellant would not lease space to Athletic Fitters. In reliance on appellant's representation, respondent executed the lease.

After executing the lease, respondent spent $3500 on improvements to the leased premises. Respondent began operations on February 1, 1986. About ten to fifteen days after opening the store, respondent observed a sign which said: "Coming Soon —Athletic Fitters." The sign was located about four storefronts down from respondent's store. In May 1986, Athletic Fitters opened a shop in the mall.

Once Athletic Fitters opened, respondent experienced a substantial drop in sales revenue. Respondent tried to increase sales through special promotions, but was unable to realize much profit from its efforts. In May 1987, respondent went out of business. Respondent vacated the leased premises on July 1, 1987, and filed bankruptcy on July 7, 1987.

At trial, respondent introduced expert testimony to prove lost profits. Initially, the expert limited his testimony to gross profits based on respondent's gross sales for the years 1983, 1984, and 1985. Respondent rested its case at that point and appellant moved for a directed verdict based on respondent's failure to prove lost net profits. The trial court denied appellant's motion and granted respondent leave

* Acting as judge of the Court of Appeals by ap-   pointment pursuant to Minn. Const. art. VI, § 2.

to reopen its case. Respondent's expert then testified that respondent lost net profits of $23,275 for 1987 and the same amount for 1988.

The jury found that respondent proved its claim of fraudulent misrepresentation and rendered a verdict for respondent, awarding damages of $50,000. Of the $50,000, $46,500 was for two years of lost profits and $3500 was for expenditures respondent made to improve the leased premises.

Following the trial, appellant made a motion for judgment notwithstanding the verdict or a new trial. The trial court denied appellant's motion. Appellant then filed a motion for reconsideration of the order denying the post-trial motion. The second motion also argued that respondent's claim was barred by principles of judicial estoppel. The trial court denied the motion, and this appeal followed.

### ISSUES

1. Did the trial court err by allowing respondent to reopen its case on the issue of damages after respondent rested its case?

2. Did the trial court err by ruling that appellant's claim of judicial estoppel did not bar respondent's cause of action?

3. Did the trial court err by incorrectly instructing the jury on the measure of damages in a fraudulent misrepresentation claim?

### ANALYSIS

### I.

#### Reopening the Case

■ Appellant first argues that the trial court erred when it allowed respondent to reopen its case-in-chief to enter evidence of lost net profits as an element of damages. Appellant contends that the trial court should have dismissed respondent's claim rather than permit respondent to reopen and submit further evidence. Appellant argues that since respondent's expert only testified about gross profits and then respondent rested, that as a matter of law

respondent did not submit a prima facie case. Respondent asserts that the question of allowing one side or the other to reopen, particularly when no real prejudice can be shown, is almost entirely within the discretion of the trial court. Respondent argues that the trial court here properly exercised that discretion when it made its decision.

"Whether a party should be allowed to reopen his case after resting is a matter within the discretion of the trial court." *State v. Casey*, 263 Minn. 47, 55, 115 N.W. 2d 749, 755 (1962). Absent a clear abuse of discretion, a trial court's decision to reopen a case will not be reversed on appeal. *See Walton v. Jones*, 286 N.W.2d 710, 713 (Minn.1979); *see also King v. Larsen*, 306 Minn. 546, 235 N.W.2d 620, 621 (1975). Here, respondent introduced some evidence on the issue of damages and rested its case. After appellant's motion to dismiss, respondent moved to reopen. The trial court allowed respondent to reopen. According to the trial court, no inadvertence, forgetfulness, lack of preparation, or bad faith was exhibited by either party. The delay in presentation of the evidence did not prejudice appellant. Based on the broad discretion afforded trial courts in this area, we affirm the decision to allow respondent to reopen its case to submit additional evidence.

### II.

#### Judicial Estoppel

■ Appellant next argues that the trial court should have granted its motion to dismiss respondent's claim based on the principle of judicial estoppel. Appellant contends that respondent's failure to list its claim against appellant as an asset in respondent's bankruptcy proceeding requires dismissal. Respondent argues that the estoppel issue is not properly before this court because it was not raised until appellant's motion for reconsideration of its first post-trial motion. The trial court ruled that the motion for reconsideration based on estoppel was not made in a timely fash-

ion because it had not been raised until after the trial.

As a general rule, estoppel is an affirmative defense which must be set forth in a pleading. *Swanson v. Domning,* 251 Minn. 110, 119, 86 N.W.2d 716, 723 (1957); *Universal Lending Corp. v. Wirth Companies, Inc.,* 392 N.W.2d 322, 325 (Minn.Ct. App.1986). Asserting a claim for equitable estoppel for the first time in a post-trial motion does not satisfy Minn.R.Civ.P. 8.03. *Universal Lending Corp.,* 392 N.W.2d at 325. Affirmative defenses not in a pleading may not properly be considered for the first time on appeal. *See Swanson,* 251 Minn. at 119, 86 N.W.2d at 723.

Appellant claims to have reserved this issue by the general pleading in its answer that "respondent's complaint failed to state a claim upon which relief could be granted." However, at the time of trial, the case appellant relies on for its judicial estoppel argument had not been decided. Therefore, it is doubtful that when appellant answered respondent's complaint and asserted the complaint failed to state a claim upon which relief might be granted, appellant had the judicial estoppel argument in mind.

Even assuming that appellant's judicial estoppel argument is properly before us, it does not persuade us. Appellant's estoppel argument is based entirely on the fact specific case of *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir. 1988). There, Oneida went bankrupt and filed a joint plan of reorganization which was confirmed by the bankruptcy court. *Id.* at 415–16. One of Oneida's major creditor's was the United Jersey Bank. Oneida reached a settlement with the bank in its reorganization plan. Seven months later, Oneida sued the bank for breach of contract and fraudulent misrepresentation based on events which occurred *before* Oneida filed bankruptcy. *Id.* at 416. At no point in the bankruptcy proceedings did

Oneida make any reference to a potential claim against the bank. *Id.*

The bank made a motion to dismiss the claim which was granted by the district court based on "fundamental principles of preclusion." *Id.* The appellate court affirmed the decision of the lower court. The appeals court reasoned that Oneida's failure to mention the possibility of a set-off against the $7.7 million debt it owed the bank violated Oneida's duty of full disclosure. The court refused to allow Oneida to benefit by its failure to disclose such important information. The court concluded that such a result would undermine the bankruptcy process and defraud the creditors that had approved the plan. *Id.* at 417–18.

Here, appellant argues that respondent should be estopped from asserting its claim against appellant because respondent did not list the claim on its bankruptcy schedule. Respondent contends that despite this failure to list the claim, the trustee was fully informed of it. In support of this assertion, respondent points to a letter from the trustee to an attorney inquiring about the possibility of litigating respondent's claim against appellant on behalf of the bankruptcy estate. The letter was dated August 26, 1987. Respondent correctly points out that the trustee finally abandoned any interest the bankruptcy estate had in this potential claim by assigning it for $500. The acknowledgement of the existence of the claim and its sale was set forth in an abandonment document filed by the trustee in bankruptcy on March 21, 1988.[1] Therefore, respondent argues, this case is distinguishable from *Oneida.* Since here, respondent disclosed the existence of its claim to the trustee, unlike *Oneida,* the trial court properly agreed with respondent. It found that the trustee was aware of respondent's claim as evidenced by the abandonment document. The trustee elected not to prosecute the claim, but rather to assign it for value. The trial court properly concluded that *Oneida* did not apply

1. The abandonment document states:
Prior to filing bankruptcy the company sued out a claim in District Court, Kandiyohi County, Minnesota, for false representations against First Union Management. * * * Har-

lowe Ortenblad, a co-plaintiff, has offered to pay $500 for an assignment of the company's rights against First Union. The trustee has no interest in continuing the suit.

here since full disclosure had occurred. The trial court properly rejected appellant's claim of judicial estoppel.

## III.

### Damages Instruction

■ Appellant's final argument is that the trial court incorrectly instructed the jury on the measure of damages.[2] Appellant argues that damages should have been limited to respondent's out-of-pocket loss of $3500 (the improvements respondent made to the premises). Appellant contends that this case does not fall within the limited economic loss exception to the out-of-pocket rule. Appellant specifically objects to respondent's recovery of future profits allegedly lost due to the misrepresentation. Appellant claims respondent will receive a windfall by recovering future profits for months in which respondent was not operating.

Respondent argues, and the trial court ruled, that the economic loss exception to the out-of-pocket rule was the proper measure of damages in this case. Respondent claims limiting it to amounts expended on improving the leasehold would be undercompensation. Respondent asserts that since appellant's misrepresentation brought about the failure of respondent's business venture, awarding lost future profits that can reasonably be proven is the only way to fully compensate respondent.

Minnesota generally adheres to the out-of-pocket damages rule in actions for misrepresentation. *Lewis v. Citizens Agency of Madelia, Inc.,* 306 Minn. 194, 199, 235 N.W.2d 831, 835 (1975). The out-of-pocket rule allows a party to recover damages which are the natural and proximate result of the party's reliance on a misrepresentation. *Id.* at 200, 235 N.W.2d at 835. The

loss is measured by the difference between what a plaintiff parted with and what plaintiff received. *Id.* The Minnesota Supreme Court has recognized that in some situations application of the out-of-pocket rule will not return a party to the status quo. *Id.* In such a situation, the rule must be construed in light of the facts being considered and an exception to strict application of the out-of-pocket rule is appropriate. *Id.* at 201, 235 N.W.2d at 835. The exception allows a party to recover economic losses caused by reliance on a misrepresentation.

A situation in which the economic loss exception to the out-of-pocket rule is applied is best illustrated by *B.F. Goodrich Co. v. Mesabi Tire Co. Inc.,* 430 N.W.2d 180 (Minn.1988). *B.F. Goodrich* involved a misrepresentation that caused the plaintiff to refrain from seeking another source for tires. The trier of fact found that the plaintiff lost its business because, based on defendant's misrepresentation, the plaintiff did not look for another tire source. Then, when it was too late to secure another supplier, plaintiff was informed that defendant would no longer supply tires to plaintiff. *Id.* at 181.

The court recognized that "the out-of-pocket rule works best in a transactional context of 'the purchaser in buying property in reliance upon the fraudulent representation of the seller.'" *Id.* at 183 (quoting *Lowrey v. Dingmann,* 251 Minn. 124, 127, 86 N.W.2d 499, 501 (1957)). The court stated that the rule did not work as well when a plaintiff is led to believe "by the misrepresentation that it had something it did not have * * *." *Id.* at 183. Since just such a situation was presented, the supreme court held that the plaintiff was entitled to recover its economic loss, "measured by the val-

2. The trial court gave the jury this instruction:
    Damages for fraud or misrepresentation are measured by the out-of-pocket loss which has been allegedly sustained by the plaintiff. In this case, the out-of-pocket loss is measured by the value of the leasehold improvements and the loss of net profits, if any, sustained by the plaintiff. The exact amount of those figures is a question for you to decide. Where a person claims to be damaged, the party claim-

ing the damage is bound to lessen, or to mitigate, damages if within their power and if it can be done by reasonable exertion. If you find that the plaintiff was induced to enter into the lease which is the subject matter of this case by misrepresentations of the defendant and [was] damaged, such damage must [be] reduced by any amount that you find that the plaintiffs could have mitigated and failed to do so.

ue of the business before the misrepresentation * * * and the value after." *Id.*

The *B.F. Goodrich* case left open the question of whether the economic loss exception allows a recovery of lost future profits. *Id.* at 184. The court left the question open because the plaintiff in *B.F. Goodrich* chose to measure its loss by showing the value of its business as a going concern before and after the misrepresentation. *Id.* The court did indicate that in proper circumstances, lost profits may be the correct measure of damages. *See id.* at 183.

We find the trial court fairly instructed the jury on the damage issue in this case. Like the plaintiff in *B.F. Goodrich,* respondent here was led to believe that it had something it did not have. Respondent was led to believe that it would not have to compete for customers with Athletic Fitters in the Kandi Mall. Also like *B.F. Goodrich,* the trier of fact here found that respondents went bankrupt due to appellant's misrepresentation. Based on these facts, the trial court concluded that limiting respondent's recovery to the $3500 it expended on improvements to the leased premises would not place respondent back into the position it occupied before the misrepresentation. The trial court realized that before the misrepresentation respondent was a profitable business, and now it is bankrupt. The trial court further found that a recovery of $3500 could not reinstate respondent to its former status. We agree with the trial court and hold that, based on the evidence presented at trial, respondent was entitled to recover lost net profits for the entire lease period. *Id.*

Appellant contends that our ruling will result in an undeserved windfall for respondent because respondent incurred no expenses from July 1, 1987, to February 1, 1988. Appellant further claims that a recovery of lost future profits here is too speculative. We disagree. Lost future profits are recoverable when they are established with reasonable certainty. Absolute certainty is not required. *See Cardinal Consulting Co. v. Circo Resorts, Inc.,* 297 N.W.2d 260, 266–67 (Minn.1980) (hold-

ing that an unestablished business may recover lost prospective profits). Here, expert testimony was introduced which provided the jury with a reasonable basis upon which to award lost future profits. The expert projected the net profits respondent lost for the years in question based on the past performance of respondent's business. The jury accepted the expert's testimony. We affirm the jury's verdict.

### DECISION

The trial court did not err by allowing respondent to reopen its case. Respondent's claim is not barred by the principle of judicial estoppel. On these facts, lost future profits, once established with reasonable certainty, were properly recoverable in a fraudulent misrepresentation action.

Affirmed.