**SPECIAL FORCE MINISTRIES,**
**et al., Respondents,**

v.

**WCCO TELEVISION, a subsidiary**
**of CBS Inc., et al., Appellants.**

No. CX–97–2220.

Court of Appeals of Minnesota.

Oct. 13, 1998.

Paul A. Sortland, Sortland Law Office, Minneapolis, MN (for respondents)

John P. Borger, Eric E. Jorstad, Faegre & Benson LLP, Minneapolis, MN; and Susanna M. Lowy, Anthony M. Bongiorno, New York, N.Y. (for appellants)

Considered and decided by KLAPHAKE, P.J., and SHUMAKER and NORTON, JJ.

## OPINION

NORTON, Judge. *

Respondents brought this action alleging fraud, trespass, and defamation, after appellants broadcast a news story about respondents. Appellants moved to dismiss the complaint under Minn. R. Civ. P. 12. The district court denied the motion, but ordered respondents to file an amended complaint stating their claims with more particularity.

Appellants then moved for summary judgment, arguing that dismissal was warranted under Minn.Stat. §§ 554.02–.05 (1996 & Supp.1997). The district court agreed that this statute applied, but concluded that respondents had presented clear and convincing evidence that appellants' conduct was tortious. The district court thus denied appellants' motion for summary judgment.[1] This court denied appellants' subsequent motion for discretionary review. The matter is now before us on remand from the Minnesota Supreme Court. *See Special Force Ministries v. WCCO Television,* 576 N.W.2d 746 (Minn. Apr.23, 1998).

We affirm the district court's denial of appellants' motion for summary judgment on all claims, but limit the defamation claim to the specific statements set out in the amended complaint.

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.

## FACTS

Respondent Special Force Family Ministries (Special Force) operated residential and nonresidential care facilities for mentally retarded persons in Hennepin and Carver Counties. In the summer of 1995, appellant Lora Johnson, an employee of appellant WCCO, applied for a volunteer position at Special Force's facility in Waconia. She provided Special Force with an application and listed appellants Jacqueline Petchel and Ann Williams as references. She told Special Force that she was unemployed and that she was interested in its ministry. Neither Johnson nor her references, who also worked for WCCO, disclosed that Johnson worked for WCCO or that she intended to secretly videotape activities at respondents' facilities.

Johnson spent 120 hours volunteering for Special Force. During that time, she used a hidden camera to gather footage to be used by WCCO.

WCCO broadcast its report on Special Force on November 6 and 7, 1995. The report contained footage of staff allegedly forgetting to feed patients and administer medications, of staff allegedly giving double doses of medication, and of a patient falling. Appellant Trish Van Pilsum, a WCCO reporter, stated that Special Force provided "questionable care" and "billed the state for care [it] simply did not provide."

Respondents Special Force and St. Angelo claim that as a result of appellants' tortious actions, their reputations have been harmed, and they have moved to Missouri. They seek actual damages in the form of moving expenses, lost revenues, and decreased donations. St. Angelo also claims he has suffered ill health, loss of reputation, embarrassment, and emotional distress. Respondents' eight named residents, many of whom moved to Missouri with Special Force, claim that as a result of appellants' actions, they were devastated, humiliated, and felt betrayed by Johnson, whom they trusted as a caregiver and friend. Many claim that their physical and

1. The district court granted partial summary judgment to appellants on the defamation claims brought by respondents' eight named residents. Respondents do not challenge this ruling.

mental disabilities have been aggravated as a result of appellants' actions.

## ISSUES

I.  Did the district court err in determining that respondents had presented clear and convincing evidence to support their trespass claim against appellants?

II.  Did the district court err in determining that respondents presented clear and convincing evidence to support their fraud claim?

III.  Did respondents present clear and convincing evidence to support their allegations of defamation?

## ANALYSIS

Appellants moved for summary judgment or dismissal under Minn.Stat. §§ 554.01–.02. Under these statutes, respondents had the burden to prove, by clear and convincing evidence, that appellants' conduct was not immune from liability because that conduct constituted a tort. *Id.* §§ 554.02, subd. 2(2), (3), 554.03. At this early stage of the proceedings, we assume that respondents have met their burden if they have presented clear and convincing evidence on the elements of their claims. *Cf. Swanlund v. Shimano Indus. Corp.*, 459 N.W.2d 151, 155 (Minn.App. 1990) (on motion to amend to plead punitive damages, party must offer evidence which, if unrebutted, would constitute clear and convincing evidence of willful indifference), *review denied* (Minn. Oct. 5, 1990).

### I.

*Trespass*

■■■ A person commits trespass when that person enters another's land without consent. *Copeland v. Hubbard Broadcasting, Inc.*, 526 N.W.2d 402, 403 (Minn.App. 1995), *review denied* (Minn. Mar. 29, 1995). A permitted entrant may become a trespasser by exceeding the scope of consent. *Id.* at 404–05; *see also Northern States Power Co. v. Franklin*, 265 Minn. 391, 396, 122 N.W.2d 26, 30 (1963) ("Wrongful conduct following an authorized entry upon the land can result in trespass.") Whether a party has given consent is a fact question for the jury. *Copeland*, 526 N.W.2d at 405; *see also Rieger v. Zackoski*, 321 N.W.2d 16, 20 (Minn.1982)

(jury issue as to whether entrant became trespasser by exceeding scope of possessor's invitation or permission).

■■■ Appellants argue that respondents' trespass claim fails because Johnson's entry was not forcible and unlawful, and because respondents are mere possessors and do not own the facility. While respondents initially welcomed Johnson onto their property, if she exceeded the scope of her consent by secretly videotaping their activities, her continuing presence became unpermitted and unlawful. *See id.* Moreover, trespass does not require ownership; the right to possess is sufficient. *See State v. Hoyt*, 304 N.W.2d 884, 890 (Minn.1981) (nursing home resident held to be in possession of nursing home property); *Neilan v. Braun*, 354 N.W.2d 856, 859 (Minn. App.1984) (tenant farmer in possession of land may sue owner for trespass).

Appellants also argue that this court should limit *Copeland* to its facts. *Copeland*, 526 N.W.2d at 402, involved a hidden camera investigation of a veterinarian. A university student, who was also employed by KSTP Television, used a hidden camera to film the veterinarian's practice methods without the permission of either the veterinarian or the owner of the home where the footage was obtained. *Id.* at 404–05. The homeowner sued KSTP. This court observed that "[c]ourts in other jurisdictions have recognized trespass as a remedy when broadcasters use secret cameras for newsgathering" and that "[n]ewsgathering does not create a license to trespass or to intrude by electronic means into the precincts of another's home or office." *Id.* (citations omitted). In reversing the grant of summary judgment to KSTP on the trespass claim, this court concluded that there was sufficient evidence that the student had exceeded the scope of consent to create a fact question. *Id.* at 405.

■■■ Appellants attempt to distinguish *Copeland* by noting that it involved a homeowner who was not the subject of the news story. This distinction is irrelevant to the issue of whether appellants have trespassed. Trespass encompasses any unlawful interference with one's person, property, or rights, and requires only two essential elements: a rightful possession in the plaintiff and unlaw-

ful entry upon such possession by the defendant. *Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 259 (Minn.1993); *All American Foods, Inc. v. Aitkin County*, 266 N.W.2d 704, 705 (Minn.1978). Thus, trespass is broad enough to cover the conduct complained of here.

■ Appellants further argue that we should overrule *Copeland* because it violates the First Amendment. The First Amendment does not insulate a person from liability for unlawful trespass. *See Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir.1971) ("First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office"); *see also The Florida Star v. B.J.F.*, 491 U.S. 524, 535 n. 8, 109 S.Ct. 2603, 2610 n. 8, 105 L.Ed.2d 443 (1989) (declining to decide whether imposing liability for acquisition and publication of unlawfully obtained information would violate First Amendment).

Our supreme court recently recognized the tort of invasion of privacy, specifically the torts of intrusion upon seclusion, appropriation, and publication of private facts. *Lake v. Wal–Mart Stores, Inc.*, 582 N.W.2d 231, 235 (Minn.1998). The court declined to recognize the tort of false light publicity because it was concerned about the increased tension between the First Amendment and the tort of false light publicity, which is similar to defamation but more expansive. *Id.* at 235–36.

■ This action is based on fraud and trespass, not on the tort of false light publicity. There is no inherent conflict or tension with the First Amendment in holding media representatives liable for the tort of fraud or trespass; neither the courts nor the legislature has given such representatives carte blanche to commit such torts in their pursuit of videotape. We therefore see no need to overrule *Copeland*.

■ Finally, appellants argue that respondents cannot enhance their trespass damages by reference to the WCCO broadcast.[2] At this stage of the proceedings, we need not reach this issue because trespass requires only an unlawful entry upon another's rightful possession; whether a defendant's conduct while on the premises proximately caused the plaintiff's injuries is a fact issue for the jury. *Cf. Lesch v. Great N. Ry. Co.*, 97 Minn. 503, 506–07, 106 N.W. 955, 957 (1906) (whether plaintiff's fright and subsequent illness were proximately caused by defendants' unlawful invasion of her home and constitutional rights was jury issue).

## II.

*Fraud*

■ Appellants argue that respondents cannot prove fraud because Johnson had no duty to disclose that she worked for WCCO. Fraud requires an affirmative misrepresentation, and a person generally has no duty to disclose material facts. *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn.1989). However, a duty is imposed when disclosure is "necessary to clarify information already disclosed, which would otherwise be misleading." *Id.; see also M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 288 (Minn.1992) (failure of adoption agency to reveal child's complete genetic background to prospective parents held actionable).

When applying for the volunteer position, Johnson disclosed some pieces of information about herself, affirmatively misrepresented that she was unemployed, and failed to disclose that she was employed by WCCO. When contacted by Special Force, Johnson's references similarly failed to disclose Johnson's true employment status. Thus, Johnson not only made affirmative

**2.** Although courts have been reluctant to award these types of "publication damages," they have often done so only after trial on the liability issues. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F.Supp. 956 (M.D.N.C.1997) (damages for lost sales, lost profits, and other injuries resulting from publication of news story not proximately caused by television network's fraud and trespass arising from undercover investigation). We therefore believe respondents should be given an opportunity to present evidence and arguments on the issues of damages and causation. *Cf. Dietemann v. Time, Inc.*, 449 F.2d 245, 250 (9th Cir.1971) ("A rule forbidding the use of publication as an ingredient of damages [in action for invasion of privacy] would deny to the injured plaintiff recovery for real harm done to him" and would "encourage conduct by news media that grossly offends ordinary" persons).

misrepresentations but also failed to disclose other information, including her true employment status.

██ Appellants further argue that respondents' fraud claim fails because they can show no damages attributable to the misrepresentation. We disagree. Had Special Force known Johnson worked for WCCO, it would not have given Johnson the volunteer position and placed her in a position of trust working with its vulnerable residents. The issue of publication damages aside, a fact issue arises as to whether respondents' claimed damages for emotional distress, humiliation, and aggravated physical and mental ailments were proximately caused by appellants' deceit. *Cf. Lowrey v. Dingmann,* 251 Minn. 124, 128, 86 N.W.2d 499, 502 (1957) (jury entitled to award special damages naturally and proximately caused by fraud prior to its discovery, including damage to reputation and lost profits, in action for fraudulent representations in sale of ponies to pony breeder, who in turn sold ponies to others).

### III.

*Defamation*

██ The elements of a defamation claim are (1) a false statement, (2) communicated to someone other than the plaintiff, and (3) tending to harm the plaintiff's reputation or lower him in the estimation of the community. *Richie v. Paramount Pictures Corp.,* 544 N.W.2d 21, 25 (Minn.1996). In cases involving allegedly defamatory statements by the media on a matter of public concern, a plaintiff must either show actual malice or actual damages. *Id.* at 26. Recovery cannot be based on presumed damages. *Id.*

██ Appellants criticize the defamation claims for failing to identify the exact defamatory language in their complaint, citing *American Book Co. v. Kingdom Publishing Co.,* 71 Minn. 363, 366, 73 N.W. 1089, 1090 (1898) (plaintiff must set forth "precise words" in pleadings). Although respondents identified some specific statements, they merely paraphrased or characterized others.

The following statements are precisely identified in respondents' first amended complaint, which was filed after the district court directed respondents to amend their complaint:

1. "[T]ime and again the I Team found evidence [Special Force and St. Angelo] billed the State for care they simply didn't provide."

2. The broadcast stated that Ron Gallucci [a resident] "took two doses of medicine by accident."

3. Home Free [a private administrative agency from which Special Force receives state funds] "keeps a cut" of fees paid to Special Force.

4. "Home Free officials told the I Team that they knew about the false claims, but did nothing to stop them."

5. "Pastor Tom St. Angelo created" an industry to make money for the ministry.

Because the contents of the broadcast were readily available to respondents and the district court gave respondents an additional opportunity to state their claims with particularity, we limit respondents' defamation claim to these specific statements. *See Benson v. Northwest Airlines, Inc.,* 561 N.W.2d 530, 538 (Minn.App.1997) (allegedly defamatory statements not contained in plaintiff's complaint beyond scope of plaintiff's claim), *review denied* (Minn. June 11, 1997); *see also Thompson v. Campbell,* 845 F.Supp. 665, 680 (D.Minn.1994) (scope of defamation claim limited to allegations in complaint).

██ Appellants further argue that because their statements are true or substantially accurate, respondents cannot prove defamation. *Jadwin v. Minneapolis Star & Tribune Co.,* 390 N.W.2d 437, 440 n. 1 (Minn. App.1986) (burden of proving falsity lies on plaintiff in action against media defendant). A plaintiff cannot meet the burden of proving falsity by showing only that a statement is not literally true in every detail; if a statement is true in substance, inaccuracies of expression or detail are immaterial. *Id.* at 441. Because appellants dispute the facts underlying these statements, we decline to dismiss respondents' defamation claim at this early stage in the proceedings. *See id.* (when plaintiff denies making statement as reported and explains exactly what he did say, issue becomes one for jury to determine whether reported statement false and whether ordinary reader would have same reaction

to plaintiff's version of facts as to reported version of facts).

## DECISION

We affirm the district court's denial of summary judgment on all of respondents' claims, but limit the defamation claim to statements specifically set out in the first amended complaint.

**Affirmed as modified.**