GIBRALTAR SAVINGS, State Federal Savings and Loan Association of Lubbock and Gateway Savings Bank, Appellees,

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY, Appellant,

v.

POPHAM, HAIK, SCHNOBRICH, KAUFMAN AND DOTY, LTD., Appellees.

No. 89–5381.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1990.
Decided July 9, 1990.

---

5. Tr. 45.

Kay Nord Hunt, Minneapolis, Minn., for appellant.

Robert G. Share, St. Paul, Minn., for appellees.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Appellant Commonwealth Land Title Insurance Company (Commonwealth) appeals a grant of summary judgment in favor of appellee, the law firm Popham, Haik, Schnobrich & Kaufman Ltd. (Popham), in this diversity action brought by Commonwealth seeking damages allegedly resulting from a legal opinion rendered by Popham. Commonwealth contends that the district court[1] erred in concluding as a matter of Minnesota law that superseding causes broke the chain of causation between Popham's alleged negligence and Commonwealth's attorneys fees and legal

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

costs incurred defending a lawsuit based upon a title insurance policy. We reject this contention and accordingly affirm.

## I. BACKGROUND

This lawsuit stems from Harry Wirth's failed attempt to develop the Milwaukee Road Depot in downtown Minneapolis. Wirth, acting through the Waterfront Companies, Inc. (Waterfront), entered into an agreement in November 1981 to purchase the Depot property from the owner for $9,500,000. Initially, Waterfront could not get the necessary financing, and after several extensions of the closing date, filed for bankruptcy to protect its rights under the purchase agreement.

Thereafter, in the spring of 1983, Waterfront obtained a $13 million construction loan from plaintiffs State Federal Savings and Loan Association of Lubbock (State Federal), Gibraltar Savings and Gateway Savings Bank (the Lenders).[2] Waterfront arranged this financing pursuant to an April 5, 1983, bankruptcy court order authorizing Waterfront to incur secured indebtedness, provided that the loan proceeds were sufficient to purchase the property and to satisfy all pre-petition and post-petition debts, except those due to Harry Wirth.

In connection with the closing of the loan transaction, Popham attorney Rolfe Worden, representing Waterfront, issued two opinion letters, one to State Federal and the other to Commonwealth. These letters represented that the loan disbursement schedule conformed with the bankruptcy court's April 5 order and that the loan to Waterfront would not be impaired by reason of the pending bankruptcy proceedings.[3] At the loan closing, on April 12, 1983, Commonwealth issued a mortgage title insurance policy to State Federal containing a clause insuring against any loss resulting from the pending bankruptcy proceedings.[4]

The parties apparently thought that Waterfront would be dismissed from bankruptcy following the agreed disbursements. In December of 1983, however, the bankruptcy court denied Waterfront's petition to dismiss the bankruptcy proceedings because several alleged unpaid creditors of Waterfront objected.[5]

Thereafter, in August 1984, the Lenders petitioned the bankruptcy court to lift the automatic stay to permit them to foreclose on the Depot property, claiming *inter alia* that Waterfront defaulted on the loan by failing to make interest payments since February 1984. The Lenders sought termination of the stay pursuant to 11 U.S.C. § 362(d)(1) (1988), which provides that the bankruptcy court shall lift the stay "for cause, including the lack of adequate pro-

---

**2.** State Savings and Loan Association of Lubbock made the original loan, contingent upon finding other lenders willing to participate in not less than 90% of the total commitment. Thereafter, Gibraltar Savings agreed to 90% participation and Gateway Savings Bank agreed to 5% participation. In addition, the assets of State Savings and Loan Association of Lubbock were transferred to plaintiff State Federal.

**3.** The letter to State Federal stated:
Based upon the [April 5 bankruptcy court order], it is our opinion that the [loan documentation], does constitute legal and binding obligations of [Waterfront], which are valid and enforceable against [Waterfront], the enforcement of which by [State Savings and Loan Association of Lubbock] will not be impaired by reason of the proceedings in the United States Bankruptcy Court....
Joint Appendix at 551. The second letter, which was addressed to Title Services, Inc., Commonwealth's agent, stated:
This letter is to confirm that we have reviewed the attached disbursement schedule in connection with the Waterfront Companies, Inc. transaction to be insured by the above referenced policy, and are of the opinion that it is in conformity with [the April 5 bankruptcy court order]....
Joint Appendix at 543.

**4.** The bankruptcy clause of the title insurance policy stated:
[I]nsurer insures against any loss, damage, costs (including reasonable attorneys' fees) or lack of marketability of title or any interference or disruption of the lien of the mortgage or the priority thereof or any proceeds due thereunder as a result of any bankruptcy proceedings existing as of the date hereof, including liens or claims that might exist in favor of a trustee in bankruptcy.
Joint Appendix at 27.

**5.** Whether the objecting parties were creditors of Waterfront or Wirth has never been resolved. These creditors eventually settled their claims with the trustee in bankruptcy.

tection of an interest in property." But the Lenders represented to the bankruptcy court that they were oversecured in the Depot property and the court therefore denied the petition.

The Lenders then notified Commonwealth that they considered the bankruptcy court's refusal to lift the automatic stay to be a loss under the title insurance policy. Commonwealth refused the claim and the Lenders sued Commonwealth to enforce the policy.

Commonwealth in turn impleaded Popham as a third-party defendant, asserting a legal malpractice claim based on the opinion letters provided by Rolfe Worden. In this third-party action, Commonwealth alleges that but for Worden's representations about the bankruptcy proceedings, Commonwealth would not have included a bankruptcy clause in its title insurance policy and the Lenders would not have been able to claim that the bankruptcy court's refusal to lift the automatic stay constituted a loss under the policy.

The district court granted Commonwealth's motion for summary judgment against the Lenders in the primary action and this court affirmed the judgment on appeal. *Gibraltar Sav., et al. v. Commonwealth Land Title Ins. Co.,* 905 F.2d 1203 (8th Cir.1990). The disposition of the primary action against Commonwealth mooted Commonwealth's claim against Popham for indemnification or contribution, leaving only this third-party action for Commonwealth's attorneys fees and costs incurred in defending against the Lenders' suit.

Popham thereafter moved for summary judgment against Commonwealth. The district court held as a matter of Minnesota law that Popham's opinion letters did not constitute the proximate cause of Commonwealth's damages because of the existence of superseding causes. The court ruled that numerous other acts had intervened in the chain of proximate causation, most notably Waterfront's default on the loan and the Lenders' failure to present evidence to the bankruptcy court that they were inadequately secured. The district court found that the Lenders had possessed an apprais-

al valuing the Depot property as worth significantly less money than the principal and accrued interest, but that they did not present this evidence to the bankruptcy court as part of a plan to conceal their true financial position from their regulators.

The district court thus granted Popham's motion for summary judgment. This timely appeal followed.

## II. DISCUSSION

■ Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). While ordinarily we review a district court's grant of summary judgment *de novo, Holloway v. Conger,* 896 F.2d 1131, 1133 (8th Cir.1990), we do give "'substantial deference'" to a district court's interpretation of state law where the court is sitting in that forum, *Benedictine Sisters v. St. Paul Fire & Marine Ins. Co.,* 815 F.2d 1209, 1211 (8th Cir.1987) (citing *Kifer v. Liberty Mut. Ins. Co.,* 777 F.2d 1325, 1330 (8th Cir.1985)).

■ Under Minnesota law, attorneys fees and legal costs are not recoverable absent specific contractual or statutory authorization. *Langeland v. Farmers State Bank of Trimont,* 319 N.W.2d 26, 33 (Minn.1982). An exception to this rule exists, however, where the attorneys fees and costs are incurred in litigation caused by the tortious conduct of the defendant. *See, e.g., Chris/Rob Realty v. Chrysler Realty Corp.,* 260 N.W.2d 456, 460 (Minn.1977). To fall within this exception, Commonwealth has to prove *inter alia* that Popham's alleged negligence constituted the proximate cause of Commonwealth's litigation expenses.

On this appeal, Commonwealth contends that the district court erred in ruling as a matter of law that superseding causes broke the chain of proximate causation between Popham's alleged negligence and Commonwealth's litigation expenses. Commonwealth argues that it was foreseeable to Popham that Commonwealth, in reliance upon Worden's representation, would include a bankruptcy clause in its title insurance policy and that the Lenders would

bring a lawsuit to enforce the policy. Commonwealth further argues that but for Worden's representations, Commonwealth would not have included a bankruptcy clause in its title insurance policy. These arguments completely miss the mark.

■ Under Minnesota law, despite the foreseeability of the harm and the existence of "but for" causation, an intervening act can constitute a superseding intervening cause, thus relieving the original actor of liability. In order for an intervening act to constitute a superseding cause

> (1) its harmful effects must have occurred after the original negligence; (2) it has not been brought about by the original negligence; (3) it actively worked to bring about a result which would not otherwise have followed from the original negligence; and (4) it was not reasonably foreseeable by the original wrongdoer.

*Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 915 (Minn.1983) (citing *Kroeger v. Lee*, 270 Minn. 75, 132 N.W.2d 727, 729–30 (1967)). Moreover, while Minnesota courts generally leave questions of proximate causation for the jury to decide, "where the evidence is so clear and conclusive as to leave no room for differences of opinion among reasonable men ... the issue of causation becomes one of law to be decided by the court." *Vanderweyst v. Langford*, 303 Minn. 575, 228 N.W.2d 271, 272 (1975).

■ The district court identified two superseding causes: Waterfront's default on the loan and the Lenders' loss of the motion to lift the stay by their withholding evidence justifying the grant of that motion. Commonwealth does not dispute that each of these acts occurred after Worden rendered the opinion letters and that neither act bears any connection to the opinion letters. Commonwealth likewise does not dispute that but for these acts, the Lenders would not have been able to claim that the bankruptcy court's refusal to lift the automatic stay constituted a loss under the title insurance policy. Furthermore, while Commonwealth contends that a suit based upon the bankruptcy clause was foreseeable to Popham, Commonwealth does not contend that either of the two intervening acts was

foreseeable to Popham. The undisputed facts therefore support the district court's conclusion that Waterfront's default and the Lenders' intentional loss of the motion to lift the stay constituted superseding causes as a matter of law. Moreover, inasmuch as this conclusion rests on the application and interpretation of state law to undisputed facts, we give great deference to the trial judge, who is deemed learned in the law of the state in which he presides.

## III. CONCLUSION

Accordingly, we affirm the judgment of the district court.