**CHRIS/ROB REALTY, a copartnership, et al., Respondents-Appellants,**

v.

**CHRYSLER REALTY CORPORATION, et al., Appellants-Respondents.**

Nos. 46466, 46713 and 46770.

Supreme Court of Minnesota.

Sept. 9, 1977.

Rehearing Denied Jan. 5, 1978.

Lawrence C. Brown and Arthur L. Doten, Faegre & Benson, Minneapolis, for appellants-respondents.

Shanedling, Phillips, Gross & Aaron and Allen H. Aaron, Minneapolis, for respondents-appellants.

Heard before KELLY, TODD, and WINTON, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Appellants appeal from a declaratory judgment construing provisions of related leasing agreements as placing on them the burden of making repairs to the leasehold, and from an order denying their motion for a new trial. Respondents appeal from a judgment denying their attorneys fees, expenses, and damages for the value of time spent in connection with this action, and from an order denying their motion for a new trial. We affirm.

Respondents are Chris/Rob Realty, Electro '68, Inc., a Minnesota corporation, and Michael Robins and James Christy, who are the sole partners of Chris/Rob Realty and shareholders and officers of Electro '68, Inc. They commenced a declaratory judgment action to determine their obligations to perform certain repairs under several leasing agreements. Appellants, named as defendants in the action, are Chrysler Realty Corporation, a Delaware corporation whose outstanding stock is owned by Chrysler Corporation, and Golden Valley Chrysler-Plymouth, Inc. (formerly Chrysler City, Inc.), a Delaware corporation whose outstanding stock is owned by Chrysler Motors Corporation, whose stock in turn is owned by Chrysler Corporation. The basic facts are not controverted, and we do not attempt to describe the parties' complex relationships. Appellants' appeal involves the interpretation of a part of one of the leases. In that connection, the appellants are in the position of a tenant under the lease and the respondents are in the position of the landlord.

Since December 1966, Robins and Christy had been very successful operators of a Chrysler-Plymouth dealership in Brooklyn Center, Minnesota. In 1968, they were denied approval from Chrysler Motors to expand their dealership. They were then awarded an Oldsmobile franchise to be constructed and operated in Golden Valley, Minnesota, on the premises here involved. Christy and Robins took affirmative steps to realize their Oldsmobile dealership, and the project came to the attention of Chrysler Motors. Desiring that they remain in the Chrysler fold, Chrysler Motors expressed its interest in doing anything possible to induce Robins and Christy to revert their allegiance.

On March 12, 1969, a negotiating session resulted in the signing of a build-lease agreement and the eventual construction of an automobile sales-and-service facility for a Chrysler dealership in Golden Valley. From the time the dealership opened for business in the fall of 1970, problems of soil sinkage were visible. The collapse of earth, which has varied from fractions of inches to 3 feet, at times creates ponding in the parking lot and has affected the slope of land near the building, which, built on piles, has not sunk and has not shown any structural defects. Several remedial measures are required, including installation of an underground pumphouse and the regrading of parts of the parking lot. At the time the parties entered into the lease agreements, all were aware of the swampy soil conditions underlying the property.

Chrysler Realty sent letters to Chris/Rob Realty, demanding they, as landlord under the lease in question, make necessary repairs. Robins responded by outlining his reasons for believing that under the terms of the leases the repairs were not respondents' obligation. When appellants threatened to make the repairs themselves and deduct the cost from the rent, which respondents claim would have forced them to default on the mortgage on the property, respondents brought this declaratory judgment action in district court. The court, sitting without a jury, found that under the terms of the leases appellants were respon-

sible for the repairs. It also denied respondents' claim for attorneys fees and expenses arising from prosecution of this action, even though it found that appellants had acted in bad faith. Both parties appeal and raise two issues that merit discussion:

(1) Are the repairs in question "structural repairs" and therefore respondents' obligation as landlord under the leases or are they appellants' responsibility as tenant under the leases?

(2) Were appellants guilty of bad faith so as to justify recovery of litigation expenses by respondents in connection with this action?

The parties agree that the language of paragraph 4 of the build-lease agreement negotiated between Robins and Christy and Chrysler Realty on March 12, 1969, governs respondents' duty to make the needed repairs. Originally, Chrysler Realty submitted a form-lease agreement, paragraph 4 of which stated:

"Tenant shall make all repairs necessary to keep the demised premises and the buildings and appurtenances situated thereon in as good order and condition as when delivered to it except exterior and structural repairs, repairs to the roof, and such other repairs as may be necessary by reason of ordinary wear and tear, damage by fire, the elements or other casualty, or damage to plate glass, which Landlord shall make."

At the close of the March 12 negotiations, the parties had agreed to the following version of paragraph 4:

"Tenant shall make all repairs necessary to keep the demised premises and the buildings and appurtenances situated thereon in as good order and condition as when delivered to it except structural repairs, repairs to the roof and repairs compensated by the insurance required hereunder which Landlord shall make."

Respondents, as landlord, are responsible for repairs to the parking lot and land only if such repairs are "structural" within the meaning of the terms of amended paragraph 4.

■ 1. It was appellants' burden to establish that the necessary repairs fell within the clause excepting "structural repairs" from the tenant's duties. The trial court found that the repairs were not structural but rather exterior and thus were the responsibility of the tenant under the terms of amended paragraph 4. This finding may be overturned only if it is clearly erroneous. Rule 52.01, Rules of Civil Procedure. Based on the circumstances of the transaction as well as the expert and documentary evidence adduced, we are not inclined to disagree with the finding of the trial court that by "structural" the parties referred to the building on the premises rather than to the surrounding parking lots.

We are satisfied that the judgment is supported by adequate evidence apart from any testimony that may have been received in violation of the Dead Man's Statute, Minn.St.1976, § 595.04.[1] In support of respondents' position, Robins testified as to the negotiating session that occurred on March 12, 1969, at which a representative of Chrysler Motors Corporation, who died 4½ years later, was present. The representative contributed nothing of substance to the issues under negotiation; instead his occasional comments were directed at reminding the parties of their interest in arriving at an agreement. The vice president of Chrysler Realty who handled the principal negotiations with Robins and Christy was available to testify at trial but was not called by appellants as a witness in order to preserve their objection based on the Dead Man's Statute. The trial court stated that Robins' testimony was "unnecessary to prove [respondents'] claims but [did] add support."

■ We need not reexamine our decisions[2] in this circumstance, for even if the testimony was erroneously admitted, it was not taken into account by the trial court in making its findings. Appellants suggest that introduction of the evidence nevertheless tainted the factfinding process. We have confidence in the ability of a court in a trial without a jury to be objective and to disregard evidence improperly admitted. While a mere recital by the court that it was not influenced by the improper evidence will not suffice, such a statement together with other evidence supporting the judgment and indicating that the inadmissible evidence was not a material factor in the court's decision will preclude reversal. E. g., *Pearson v. Bertelson*, 249 Minn. 218, 82 N.W.2d 66 (1957). See, *Parsons Electric Co. v. Village of Watertown*, 283 Minn. 505, 169 N.W.2d 20 (1969); *Hawkins v. Hayward*, 191 Minn. 543, 254 N.W. 809 (1934). Such is the situation here.

■ 2. We have carefully examined the record and are unable to agree with the trial court that appellants acted in bad faith in connection with this litigation. Appellants' bad faith is said to be demonstrated by their letters of demand that respondents make repairs, by their failure to respond to Robins' letters of reply, and by their refusal to call as a witness their principal negotiator of the March 12, 1969, meeting. None of this conduct constitutes bad faith cognizable by a court as justifying an award of attorneys fees. See, generally, *Fownes v. Hubbard Broadcasting, Inc.,* Minn., 246 N.W.2d 700, 702 (1976). Appellants had no duty to call their negotiator as a witness, even if his absence would have hindered the adjudicatory process. Moreover, as we noted in *Peters v. Fenner*, 294 Minn. 488, 489, 199 N.W.2d 795, 796 (1972): "Where the refusal to perform is based on a mistaken but good-faith dispute over the interpretation of a contract, it is not an appropriate case for the allowance of attorneys' fees." The instant controversy was hard fought and pointedly adversarial, but nothing more. Taking appellants' conduct in the context of this case, we do not find bad faith on their part.

---

1. Minn.St.1976, § 595.04 has been superseded by Rule 616, Rules of Evidence, for actions and proceedings brought after July 1, 1977.

2. *Pomerenke v. Farmers Life Insurance Co.,* 228 Minn. 256, 36 N.W.2d 703 (1949); *Caldis v. Curtis Hotel Co.,* 255 Minn. 98, 95 N.W.2d 641 (1959).

Furthermore, respondents' reliance on *Bergquist v. Kreidler*, 158 Minn. 127, 196 N.W. 964 (1924), is misplaced. The *Bergquist* decision recognized a traditional exception to the general rule denying attorneys fees: When one party as a direct result of tortious conduct or breach of contract causes a second party to enter into litigation with a third party, the second party's litigation expenses are a proper element of damages in an action against the first party. *Tarnowski v. Resop*, 236 Minn. 33, 51 N.W.2d 801 (1952); *Smith v. Chaffee*, 181 Minn. 322, 232 N.W. 515 (1930). Since in the instant case respondents do not seek expenses incurred in litigation with a third party, *Bergquist* and similar decisions are of no avail to them. *Stickney v. Goward*, 161 Minn. 457, 201 N.W. 630 (1925). We therefore affirm the trial court's denial of respondents' litigation expenses.

Affirmed.

MacLAUGHLIN, J., took no part in the consideration or decision of this case.