**In the Matter of the WELFARE OF D.J.N., D.L.N., D.C.R., C.M.R., D.L.R. and D.R.R.**

**No. C2–96–2380.**

Court of Appeals of Minnesota.

Aug. 12, 1997.

Office of the Hennepin County Public Defender, William E. McGee, Chief Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, for Appellants.

Michael O. Freeman, Hennepin County Attorney, Andrew J. Mitchell, Senior Assistant Hennepin County Attorney, Minneapolis, for Respondent.

Jonathan G. Steinberg, Chrastil, Steinberg & Sarnoski, P.L.L.P., Minneapolis, for Guardian Ad Litem.

## OPINION

CRIPPEN, Judge.

Appellants dispute trial court orders that terminate their parental rights with respect to six children. Appellants claim that the trial court erred in reopening the evidence and taking judicial notice of the juvenile court file, which includes transcripts and exhibits from a 1994 child protection proceeding. Appellants further assert that the trial court erred in conditionally admitting child protection and adoption services files, as well as erring in several other evidential rulings. Finally, appellants allege bias by the trial court, the rendering of findings that are not supported by substantial evidence, and the wrongful failure of the court to consider appellant D.J.N.'s desire that his mother's pa-rental rights not be terminated. We affirm, taking this occasion to restate existing law on the use of prior court records.

## FACTS

Appellant Ruby Nichols is the mother of all six children involved in this proceeding, and appellant Dwayne Roberts is the father of the four youngest children.[1]

The question of the family's status has been before the courts since June 1991, when the first child protection petition was filed. In October 1992, a second petition was filed. In that proceeding, the court placed the two youngest children out of their home after finding that they were severely malnourished and failing to thrive, and the court ordered protective supervision for the four oldest children. The court's order required that the parents not use or sell controlled substances in the family residence and that appellant Roberts undergo domestic abuse counselling.

In June 1993, protective supervision of the four oldest children was extended. The court rejected a motion for placement of the children, but the record includes evidence that their mother had failed to provide proof of medical appointments and immunizations, failed to make an appointment with a psychologist, failed to comply with an order for urinalysis testing, and tested positive for cocaine and alcohol. Two months later, after a showing of continued drug use by the mother, along with evidence of physical abuse of the mother by appellant Roberts, the four oldest children were placed out of the home.

Although duly notified, none of the parents appeared for a child protection trial proceeding in January 1994. After a one-day continuance, the petitioning authorities presented the testimony of a child protection worker and the children's guardian ad litem and introduced numerous exhibits. The evidence showed that appellant Nichols was undergoing treatment for chemical dependency, that she had demonstrated a lack of concern for her children and that appellant Roberts, who had not entered treatment for chemical and

---

1. The father of the oldest child has not been determined, and the father of the second-oldest child, Johnny Earl Ashford, is not contesting the termination of his parental rights.

domestic abuse, had abused appellant. Based on this evidence, the trial court adjudicated the children in need of protection or services. The mother later appealed, and this court affirmed the trial court. *In re Welfare of D.N.*, 523 N.W.2d 11, 13 (Minn. App.1994), *review denied,* (Minn. Nov. 29, 1994).

In August 1995, the Department of Children and Family Services filed a petition for termination of parental rights. During 14 days of trial activity in the summer of 1996, 16 witnesses appeared, and over 80 exhibits were introduced. The trial court subsequently issued its termination order, with findings and conclusions.

### ISSUES

1. Did the trial court err in taking judicial notice of the court files?

2. Were the parents prejudiced by use of the files?

3. Were there other trial court errors?

### ANALYSIS

■■■ We will not disturb the trial court's evidentiary rulings unless they are based on an erroneous view of the law or constitute an abuse of discretion, and appellants' entitlement to a new trial rests upon their ability to demonstrate prejudicial error. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990).

### 1. Judicial Notice of Court File and Social Agency Materials

All parties to the termination trial proceeding rested their cases on August 21, 1996. When they appeared the following day for closing arguments, the court sua sponte proposed taking judicial notice of the juvenile court file. Counsel for appellants opposed reopening of the evidence for this purpose, especially as to events before 1994; counsel pointed to a pretrial agreement of the parties that they would not re-litigate pre–1994 events. Appellants' counsel argued that they would have prepared for trial differently had

they known that the entire juvenile file was going into evidence. Counsel for the petitioning agency indicated that the agency had introduced sufficient evidence to support its proposed findings. Petitioner's counsel also suggested that the court should be able to review its own file, perhaps without considering the contents as evidence.

The trial court concluded that it could take judicial notice of the entire juvenile file, relying on *In re Welfare of Clausen,* 289 N.W.2d 153, 156–57 (Minn.1980) (upholding a trial court's decision to take judicial notice of juvenile and criminal files), and Minn. R. Evid. 201(b) (permitting judicial notice of material not subject to reasonable dispute).[2]

The court went on to raise the issue of whether it could take judicial notice of the transcripts and exhibits from the 1994 protection proceeding. The parties submitted briefs on the issue, and again the trial court concluded that it would take judicial notice of these materials. The parties focused on two cases from this court that might appear contradictory. *In re Zemple,* 489 N.W.2d 818, 820 (Minn.App.1992) (holding that testimony from a prior proceeding was not properly the subject of judicial notice because facts addressed in the testimony were "not beyond dispute"); *In re Miner,* 424 N.W.2d 810, 813 (Minn.App.1988) (holding that it was proper for commitment court to take judicial notice of doctors' testimony in prior competency proceedings), *review denied* (Minn. July 28, 1988). Supporting the position of appellants, at least in part, counsel for the agency argued that the trial court should not take judicial notice of the evidence presented at the 1994 trial, stating that "the doctrine of judicial notice appears to be a very slippery one, subject to easy misapplication."

■■■ Court records and files from prior adjudicative proceedings are an appropriate subject for judicial notice by the court. *Clausen,* 289 N.W.2d at 157; *Miner,* 424 N.W.2d at 813. *See Zemple,* 489 N.W.2d at 820 (upholding trial court's decision to take judicial notice of findings of fact from prior

---

2. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
Minn. R. Evid. 201(b).

proceedings despite holding judicial notice impermissible on prior testimony). As a general rule, judicial notice may be taken at any stage of the proceedings. Minn. R. Evid. 201(f).

 Notwithstanding these general rules for taking judicial notice of prior court records, the discretion of the court in that respect is proscribed by the rule that any affected person is entitled to notice that identifies the portions of the record that the court will consider in determining adjudicative facts in the case. *Clausen,* 289 N.W.2d at 157. This notice serves two purposes. First, it gives the affected party an adequate opportunity to refute the likely implications of the record. *See Thompson v. Thompson,* 238 Minn. 41, 47, 55 N.W.2d 329, 332 (Minn. 1952) (holding that in a custody proceeding, a parent should have opportunity to cross examine and refute testimony and recommendations in social agency reports). Second, it permits a meaningful determination of objections premised on the language of Minn R. Evid. 201(b).

 The issue remains whether the same propositions of law govern the choice to include in the record the substance of testimony or written reports contained in a court file. In *Zemple,* we saw problems in this regard because judicial notice under rule 201(b) does not extend to matters in dispute. *Zemple,* 489 N.W.2d at 820. It is more significant that this evidence involves an important distinction between judicial notice law and the law governing the use of hearsay reports in personal welfare cases—the mushrooming body of judicial activity in the fields of family law, juvenile justice, child protection, and involuntary hospitalization. It is an established element of trial court discretion in personal welfare cases to admit written materials as hearsay evidence, provided that the affected parties have an opportunity to dispute the material, either by calling the authors of those reports as witnesses or otherwise responding. *Stanford v. Stanford,*

266 Minn. 250, 258, 123 N.W.2d 187, 192–93 (1963) (recognizing that the use of social agency reports should be encouraged; stating that care should be taken "to give fair notice of the contents of such reports to the parties involved so as to afford them every opportunity to test the credibility of the reporter through cross-examination or otherwise and to meet or answer every adverse fact or inference included therein."); *In re Welfare of N.W.,* 405 N.W.2d 512, 517 (Minn.App. 1987) (noting *Stanford* and other precedents calling for an opportunity to respond to social reports); *See Gumphrey v. Gumphrey,* 262 Minn. 515, 520, 115 N.W.2d 353, 357 (1962) (encouraging use of social reports).[3]

 Counsel observes in this case that the definition of the issue is clouded by uncertainty when the trial court simply takes judicial notice of the files and records and it is unclear which contents the court is devoting attention to. More particularly, the general reference to prior records makes it unclear whether the court is looking at (a) orders or documents that show the scope of proceedings, or (b) other parts of the files, such as testimony, exhibits, or other writings. There is no record in this case to clarify what portions of the prior files and records were given attention by the trial court. As already stated, the law treats different portions of the files and records differently.

 It was a mistake for the trial court in the present case to take judicial notice of the entire files or to refer to files and records without clarifying what parts it would consider. A considerable part of the files and records is well beyond the reach of judicial notice. And consideration of most of the files would contradict the holding in *Stanford* that a trial court should give notice of evidence it plans to consider so that the affected party has an opportunity to cross examine authors of materials or otherwise respond. It was error here to make prior files a part of the record without prior notice of the particular use expected to occur.

**3.** We are cognizant of Minn.Stat. § 260.155, subd. 1(a) (1996), which states that in all adjudicatory proceedings involving a child alleged to be in need of protection or services, the court shall admit only evidence that would be admissible in a civil trial. We see nothing in this provision to contradict the social report law announced by the supreme court in *Stanford* and its progeny, mostly arising in personal welfare cases that also constituted civil proceedings.

### 2. Prejudice to Appellants

Although the trial court should have disclosed the portions of the file it planned to use and should have given appellants an opportunity to respond, appellants have shown no prejudice. *See Uselman,* 464 N.W.2d at 138 (holding that the party asserting an error in admitting evidence has the burden to demonstrate prejudicial error). There is only the slightest identification of findings that are alleged to have come from information not contained in the immediate record. In addition, there is an abundant number of additional supportive findings that are rooted entirely in the present record and are adequate to mandate that the trial court's order be affirmed. Moreover, appellants have not adequately shown how their approach to the case would have differed if the court had not referred to the file. We cannot determine prejudice where there is little indication that the court considered evidence from prior records, no showing that use of the material otherwise materially affected the result, and no showing of an offer of proof to contradict information that might have been used by the court. *See Chris/Rob Realty v. Chrysler Realty Corp.,* 260 N.W.2d 456, 459 (Minn.1977) (refusing to reverse for erroneous receipt of evidence after bench trial where the record showed that the evidence did not influence the trial court, and there was adequate lawful evidence to support its decision).

### 3. Other Issues

#### a. Admission of Agency Files

Appellants argue that the child protection/adoption files were inadmissible because (1) the foundation was improper, (2) the files are not business records within the meaning of Minn. R. Evid. 803(6) and the cases applying that rule, and (3) the documents in the file contained inadmissible double hearsay. Even assuming that the trial court erred in conditionally admitting the child protection and adoption files, we find nothing in the record to suggest that this decision worked to the prejudice of appellants. The circumstances here are not different from those surrounding the court's erroneous, unlimited reference to its prior records. We are also mindful in this regard of an appropriate appellate court confidence, expressed in *Chris/Rob Realty,* "in the ability of a court in a trial without a jury to be objective and to disregard evidence improperly admitted." *Chris/Rob Realty,* 260 N.W.2d at 459. Moreover, the record here includes no showing that the trial court used information from these social files. *Id.* Accordingly, the admission of the child protection and adoption files is not a ground for reversal regardless of whether their admission was erroneous.

#### b. Other Evidentiary Rulings

Appellants allege numerous evidentiary errors by the trial court relating to both testimony and exhibit evidence. We have examined all of appellants' objections, the trial court's rulings, and the evidence ultimately admitted, and we find no abuse of the trial court's discretion or any indication that these objections relate to evidence that materially affected the outcome of the case.

#### c. Judicial Bias

Even if a trial court's comments are not always appropriate, appellate courts will not intervene unless the comments were "prejudicial, biased or deprived plaintiffs of their right to a fair trial." *Uselman,* 464 N.W.2d at 139. Further, there is an appropriate reduction in concern for the content of questions and the tone of voice of a trial judge in a bench trial. *See Block v. Target Stores, Inc.,* 458 N.W.2d 705, 712–13 (Minn. App.1990) (criticizing trial judge for lengthy and sarcastic questioning of a witness especially because of the possible effect on the jury's view of the case), *review denied* (Minn. Sept. 28, 1990).

We agree that the record reflects somewhat harsh responses and questioning by the trial court. But we conclude that the trial court's behavior did not reflect bias against appellants.

#### d. Support for Trial Court's Findings

On review of an order terminating parental rights, this court determines whether the trial court's findings address the

statutory criteria, are supported by substantial evidence, and whether they are clearly erroneous. *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990). The trial court issued a comprehensive order that includes 115 separate findings of fact. The petition alleged and the court found: (1) that appellant Roberts abandoned the children, Minn. Stat. § 260.221, subd. 1(b)(1) (1996); (2) that both Nichols and Roberts refused to comply with parent-child duties, Minn.Stat. § 260.221, subd. 1(b)(2) (1996); (3) that Nichols is palpably unfit to be a parent, Minn. Stat. § 260.221, subd. 1(b)(4) (1996); (4) that both Nichols and Roberts failed to correct conditions after a child protection adjudication, Minn.Stat. § 260.221, subd. 1(b)(5) (1996); and (5) respecting both appellants, that the children were neglected and in foster care, Minn.Stat. § 260.221, subd. 1(b)(8) (1996).

Our review of the trial court's findings show that they address the statutory criteria, are supported by substantial evidence, and are not clearly erroneous.

### e. Desire of D.J.N.

In testimony taken in chambers outside the presence of his parents, the oldest child, D.J.N., who is 14, expressed his desire that he not be adopted and that his mother's parental rights be preserved. Even if a statutory basis for termination is shown, the trial court should not terminate parental rights unless there is a showing that termination is in the child's best interests. *In re Welfare of M.P.*, 542 N.W.2d 71, 74 (Minn. App.1996). In considering the best interests of the child, the court is required to take into account both the child's wishes and his chances for adoption. *Id.* at 75–76. Further, if a child is over the age of 14, his consent is required for adoption. *Id.* at 76 (citing Minn.Stat. § 259.24, subd. 3 (1996)).

Unlike the trial court in *M.P.*, the trial court in this case properly considered D.J.N.'s preference to be reunited with his mother and appellant Roberts. The court stated:

> D.J. is finally having an opportunity to participate in age-appropriate activities and outings without the burden of being responsible for his younger siblings. D.J. told the Court that he intends to get a part time job and save his money for college. It is this Court's belief that D.J.'s hopes and dreams for his future would not survive a return to his mother's care. While this court recognizes the sadness and grief that D.J. will experience over the loss of his mother as an active participant in his life, termination of Ms. Nichols' parental rights to D.J. would allow D.J. to enjoy the remaining four years of his childhood without acting as a surrogate parent to his siblings. This Court is also cognizant of the fact that D.J. is at an age where he is capable of initiating and continuing contact with his mother and such contact is not specifically prohibited by this order.

These observations of the trial court are adequately supported by the record and by the trial court's other findings of fact. They demonstrate adequate consideration of the mandate to examine the best interests of the child.

### DECISION

Appellants failed to demonstrate prejudice in the trial court's choice to examine prior judicial and social records. Other claims of error in the case are without merit.

**Affirmed.**