*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1993**

In the Matter of the Welfare of the Children of: J. S. and P. M., Parents

**Filed April 20, 2015
Affirmed
Peterson, Judge**

Benton County District Court
File No. 05-JV-14-1315

Thomas E. Kramer, Kramer Law Office, St. Cloud, Minnesota (for appellant J.S.)

Phillip Miller, Benton County Attorney, William V. Faerber, Assistant County Attorney, Foley, Minnesota (for respondent)

Barbara Bishop, Guardian Ad Litem, Princeton, Minnesota

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

Appellant-mother challenges the transfer of permanent legal and physical custody of her two children to their father. She argues that the county should not have been relieved of its responsibility to make reasonable efforts to reunify her with the children, that the children should have been permitted to testify at trial, and that she should have been given an additional six months to work on her case plan. Because none of the challenged rulings was an abuse of the district court's discretion, we affirm.

**FACTS**

Appellant-mother J.S. and father P.M. are the biological parents of S.M., born October 9, 1999, and A.M., born March 15, 2002. At some point, due to J.S.'s drug use, Benton County Human Services (the county) removed the children from J.S.'s home and placed them with their paternal grandparents, with whom P.M. resides. The county had worked with the family on several previous occasions due to the children's truancy from school, child neglect, and J.S.'s drug use. In February 2014, J.S. was sentenced for fifth-degree controlled-substance crime and driving while impaired. The county petitioned for S.M. and A.M. to be adjudicated children in need of protection or services (CHIPS). J.S. admitted to allegations in the CHIPS petition, S.M. and A.M. were adjudicated CHIPS, and a court-ordered case plan was implemented in March 2014. Under her case plan, J.S. was required to abstain from nonprescribed chemicals, submit to random drug testing, complete a chemical-dependency assessment and follow its recommendations, complete a psychological evaluation, participate in family counseling with the children, attend supervised visits with the children, maintain housing, remain law abiding, follow the terms of all court orders and her probation, and cooperate with the county.

In July 2014, the county petitioned for permanent legal and physical custody of the children to be transferred to P.M. The county alleged that J.S. had failed to address her chemical-dependency problem or correct the conditions that led to the children's out-of-home placement. The next month, because of J.S.'s "multiple failures to follow through on aspects of the case plan," the county requested that it be relieved of its responsibility to make reasonable efforts to reunify J.S. and the children. According to the county, J.S.

2

had completed a chemical-dependency assessment but refused to follow through with its recommendation of chemical-dependency treatment. The county also maintained that J.S. did not complete a psychological evaluation, failed to appear for random drug testing even when the county provided transportation, requested fewer visits with the children than recommended by the county, failed to maintain contact with the children, refused to sign releases for the county to gain information, and did not cooperate with the county. J.S. disputed the county's contention that she was not making progress on her case plan, and she asked that she be given an additional six months to follow through with her case plan. The district court decided to "suspend [the county's responsibility to make reunification efforts] so [the county] won't have to be doing it as the matter is pending" but stated that "if the Court determines that [J.S.] is in substantial compliance [with her case plan] then certainly reunification should still be the focus, and she should have an opportunity to complete what she is doing." The district court later "relieved" the county of its responsibility to make reunification efforts "due to the permanency timelines expiring and [J.S.'s] failure to progress on any aspect of the [c]ourt-ordered case plan over more than 6 months."

A court trial was held in October 2014. J.S. requested that the children, then ages 15 and 12, be allowed to testify regarding their best interests and where they wanted to live. The county and the guardian ad litem (GAL) opposed allowing the children to testify. They argued that it would be emotionally damaging and against the children's best interests to be put into a position of choosing between parents and that the district court could decide the case without the testimony. The district court determined that it

3

was not appropriate or in the children's best interests to have them testify at trial and denied J.S.'s request.

During trial, the county social worker testified about the ways that J.S. failed to comply with her case plan. The social worker also testified that P.M. had fully complied with his case plan and that she believed that a permanent transfer of legal and physical custody to P.M. was in the children's best interests. A family counselor who provided services for the family testified that she believed that it was in the children's best interests to remain in P.M.'s custody. The GAL stated that she believed that it was in the children's best interests to temporarily remain in P.M.'s custody with the county maintaining protective supervision. Following trial, the district court transferred permanent legal and physical custody of the children to P.M., with the county retaining protective supervision, and found that this disposition was in the children's best interests. This appeal followed.

## D E C I S I O N

A district court has "broad discretion" when deciding a matter that involves the permanent legal and physical custody of a child. *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002). The district court abuses its discretion if it makes findings that are not supported by the evidence or improperly applies the law. *Id.* The district court's findings are reviewed for clear error, and "[a] finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 660-61 (Minn. 2008) (quotation omitted). A district court stands in a superior position to assess the

4

credibility of witnesses, *In re Welfare of A.D.*, 535 N.W.2d 643, 648 (Minn. 1995), and an appellate court views the record in the light most favorable to the district court's findings. *N.A.K.*, 649 N.W.2d at 174.

## I.     Reasonable Efforts to Reunify

J.S. argues that the district court abused its discretion by relieving the county of its responsibility to make reasonable efforts to reunify her with her children.

> Once a child alleged to be in need of protection or services is under the court's jurisdiction, the court shall ensure that reasonable efforts . . . by the social services agency are made to prevent placement or to eliminate the need for removal and to reunite the child with the child's family at the earliest possible time . . . .

Minn. Stat. § 260.012(a) (2014).

> Reasonable efforts to prevent placement and for rehabilitation and reunification are always required except upon a determination by the court that a petition has been filed stating a prima facie case that: . . . (7) the provision of services or further services for the purpose of reunification is futile and therefore unreasonable under the circumstances.

*Id.*

J.S.'s case plan was implemented following the CHIPS adjudication in March 2014.  By July, the county filed the permanency petition due to J.S.'s alleged failure to comply with her case plan in numerous ways.  According to the county, J.S. had failed to participate in recommended chemical-dependency treatment, complete a psychological evaluation, appear for random drug testing, attend supervised visitation with the children as recommended, maintain contact with the children, sign releases for information, and cooperate with the county.  These deficiencies had not been remedied by August, when

5

the district court "suspend[ed]" reasonable efforts, or by September, when the district court "relieved" the county of its responsibility to make reasonable efforts. Given J.S.'s failure to comply with her case plan, even after receiving notice that the county would be seeking a transfer of custody, the district court did not abuse its discretion by relieving the county of its responsibility to make reasonable efforts to reunify J.S. and the children.

## II. Testimony of the Children

J.S. argues that the district court erred by denying her request for the children to testify at trial. A district court has broad discretion when determining whether to admit or exclude evidence in a juvenile-protection proceeding, and "[a] new trial will be granted because of an improper evidentiary ruling only if the complaining party demonstrates prejudicial error." *In re Child of Simon*, 662 N.W.2d 155, 160 (Minn. App. 2003).

"The paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child." Minn. Stat. § 260C.001, subd. 2(a) (2014); *see also* Minn. Stat. § 260C.511(b) (2014) (stating that a court must be governed by the best interests of the child when making a permanency disposition in a juvenile-protection proceeding). "In considering the best interests of the child, the court is required to take into account [] the child's wishes . . . ." *In re Welfare of D.J.N.*, 568 N.W.2d 170, 177 (Minn. App. 1997). The district court determined that testifying would be against the children's best interests, reasoning that it would be inappropriate to put "the children in a difficult position of having to choose which parent is best for them." The district court did, however, permit the social worker and the children's maternal grandmother to testify

6

regarding the children's preferred living arrangements. The district court did not abuse its discretion by excluding the children's testimony at trial.

### III. Transfer of Permanent Legal and Physical Custody

J.S. argues that the district court erred by transferring permanent legal and physical custody of the children to P.M. because the transfer was "clearly against the best interests of the children." She contends that the district court instead should have granted a continuance of the trial for six months to permit her to work on her case plan.

> Termination of parental rights and adoption, or guardianship to the commissioner of human services through a consent to adopt, are preferred permanency options for a child who cannot return home. If the court finds that termination of parental rights and guardianship to the commissioner is not in the child's best interests, the court may transfer permanent legal and physical custody of the child to a relative when that order is in the child's best interests.

Minn. Stat. § 260C.513(a) (2014); *see also* Minn. Stat. § 260C.515, subd. 4 (2014) (stating that a court "may order permanent legal and physical custody to a fit and willing relative in the best interests of the child"). "Best interests" means "all relevant factors to be considered and evaluated." Minn. Stat. § 260C.511(a) (2014). "[A]n order for transfer of permanent legal and physical custody to a relative shall only be made after the court has reviewed the suitability of the prospective legal and physical custodian[.]" Minn. Stat. § 260C.515, subd. 4(1).

J.S. completed five chemical-dependency assessments following the implementation of her case plan. The first two assessments recommended in-patient treatment, but J.S. refused to participate in in-patient treatment. J.S. testified that she had

7

been offered a job, needed to save money and pay bills, and felt that she needed to work rather than undergo in-patient treatment. The final three assessments recommended out-patient treatment. J.S. began out-patient treatment approximately one month before trial, and this treatment was ongoing at the time of trial. Before the county's responsibility to make reasonable efforts was suspended, J.S. failed to appear for random drug testing on two occasions. A third drug test had a "dilute" result, which the county considered a positive result. J.S. had a history of "attempt[ing] to manipulate the testing process" by "us[ing] somebody else's urine to test negative." J.S. did not complete a psychological evaluation even though the county referred her for an evaluation, and she did not participate in family counseling. She failed to appear for several scheduled visits with the children and requested that the number of visits per week be reduced from two to one.

J.S. contends that the district court should have given her an additional six months to work on her case plan before deciding whether to transfer custody. "If the parent or guardian has maintained contact with the child and is complying with the court-ordered out-of-home placement plan, and if the child would benefit from reunification with the parent, the court may . . . (ii) continue the matter up to a total of six additional months." Minn. Stat. § 260C.204(c)(1) (2014). Given that J.S. was not complying with her case plan, the district court did not abuse its discretion by denying a six-month continuance.

P.M. also had a court-ordered case plan. According to the social worker, P.M. complied with his case plan in every way and "exceeded what [the county] typically asks of a parent to do." Like J.S., P.M. has a criminal history and a history of chemical use. P.M. completed chemical-dependency treatment and aftercare in a halfway house and

8

was attending Narcotics Anonymous meetings twice weekly. P.M. submitted to random drug tests following the implementation of his case plan, and he had no positive test results. Before beginning to reside with the children, P.M. progressed from supervised visitation to unsupervised visitation to overnight visitation with the children. He participated in family counseling and several parenting-skills programs. The children had problems with school truancy while living with J.S., but, according to the social worker, they were "doing phenomenal" in school while living with P.M. The social worker considered the home that P.M. shares with his parents to be "a safe and stable environment" for the children.

Based on the evidence presented at trial, the district court found that J.S.'s performance on her case plan was "unacceptable" and that she had not "substantially completed any aspect of the case plan." The district court found that P.M. had "substantially completed" and "gone above and beyond" his case plan, provided the children with "safe and stable housing," had "a strong bond" with the children, and was "an appropriate placement" for the children. The district court concluded that there was clear and convincing evidence that the children could not be safely returned to J.S.'s home and that transferring permanent legal and physical custody to P.M. was in the children's best interests. The district court's findings are supported by the evidence and are not clearly erroneous. The district court did not abuse its discretion by transferring permanent legal and physical custody of the children to P.M.

**Affirmed.**

9